JOHN DEERE INSURANCE COMPANY, Plaintiff-Appellant and Counter-defendant-Appellant, v. ALLSTATE INSURANCE COMPANY *et al.*, Defendants-Appellees (Allstate Insurance Company *et al.*, Counterplaintiffs-Appellees and Plaintiffs-Appellees and Counterdefendants-Appellants; Mark E. Gossett, Counterplaintiff-Appellee).

First District (3rd Division)   No. 1—97—2904

Opinion filed July 29, 1998, *nunc pro tunc* June 30, 1998.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Shaun McParland Baldwin and Eric J. Emerson, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (Carol Proctor and Joshua G. Vincent, of counsel), for appellees Allstate Insurance Company and John G. Thomas.

Peter Alexander, Ltd., of Rockford (Peter Alexander, of counsel), for appellee Mark E. Gossett.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff John Deere Insurance Company (John Deere) appeals from an order of the circuit court denying its motion for summary judgment and granting defendants Allstate Insurance Company's (Allstate), John Thomas' (Thomas) and Mark Gossett's (Gossett) cross-

motions for summary judgment in John Deere's declaratory judgment action to determine whether it had an obligation to defend or indemnify Thomas, Allstate's insured, in an underlying action filed by Gossett against Thomas, for injuries Gossett allegedly suffered as a result of being struck by an automobile driven by Thomas. On appeal, John Deere contends that: (1) Thomas was not an insured under the terms of a garage insurance policy issued by John Deere (John Deere policy) to Rock River Ford, Inc. (Rock River Ford), an automobile dealership; (2) Illinois law does not require automobile dealers to provide liability insurance coverage to permissive users of their insured automobiles; and (3) even if Thomas was an insured under the John Deere policy, the liability coverage under the policy was limited to the "$20,000/$40,000" mandatory minimum limits set forth in sections 7—203 and 7—601 of the Illinois Vehicle Code. 625 ILCS 5/7—203, 7—601 (West 1994). For the reasons set forth below, we affirm.

On August 9, 1995, Rock River Ford gave Thomas, its customer, permission to test-drive one of its automobiles, during which time Thomas allegedly struck and injured Gossett, a pedestrian. On the day of the accident, Rock River Ford was insured under the John Deere policy. Rock River Ford had previously referred to this policy in a certificate of insurance which was attached to its 1994 application to the Secretary of State for a new and used car dealers' license for the year ending December 31, 1995. In the certificate, Rock River Ford specifically stated that the policy included garage liability limits in the amount of $500,000 per accident. In fact, section IV of the John Deere Policy, entitled "GARAGE LIABILITY LIMITS/COVERAGES," provided that "each 'accident' " related to "garage operations" would be covered in the amount of $500,000. Under the John Deere policy issued to Rock River Ford, an "insured" was defined as follows:

"WHO IS AN INSURED

a. The following are 'insureds' for covered 'autos':

(1) You for any covered 'auto.'

(2) Anyone else while using with your permission a covered 'auto' you own *** except:

\* \* \*

(d) Your customers, if your business is shown in the Declarations as an 'auto' dealership. However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess, or contingent), they are an 'insured' but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged.

(ii) Has other available insurance (whether primary, excess, or contingent) less than the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged, they are an 'insured' only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance."

Thomas was also personally covered at the time of the alleged accident by a separate automobile liability insurance policy issued to him by Allstate (Allstate policy) that had liability limits of $50,000 per person and $100,000 per occurrence. The Allstate policy defined an "insured auto" as, *inter alia*, a "non-owned private passenger auto used by you or a resident relative with the owner's permission. This auto must not be available or furnished for the regular use of an insured person." The Allstate policy further provided:

"If There Is Other Insurance

If an insured person is using a substitute private passenger auto or non-owned auto, our liability insurance will be excess over other collectible insurance. If more than one policy applies on a primary basis to an accident involving your insured auto, we will bear our proportionate share with other collectible liability insurance."

After the alleged accident, Gossett filed a complaint against Thomas in the circuit court of Winnebago County, Illinois (*Gossett* lawsuit). Allstate informed John Deere that it expected John Deere to provide Thomas with liability insurance coverage. John Deere responded that it was denying coverage to Thomas because Thomas did not qualify as an insured under the "WHO IS AN INSURED" provision in the John Deere policy.

On April 30, 1996, John Deere filed a complaint for declaratory judgment in the circuit court of Cook County, arguing that Thomas was not insured under the John Deere policy because he had his own insurance policy from Allstate with sufficient limits to comply with Illinois law. John Deere also pled in the alternative that if the trial court should find that Thomas was an insured under its policy, the maximum liability coverage available to him was at least $20,000 per person for death or bodily injury and $40,000 per accident for death or bodily injury—the mandatory minimum limits as required by the Illinois Vehicle Code (625 ILCS 5/7—203, 7—601 (West 1994))—and not the greater limit of $500,000 contracted for by Rock River Ford under the policy issued to it.

On August 20, 1996, Allstate and Thomas filed a joint counterclaim for declaratory judgment, arguing that: (1) Thomas was an insured under the John Deere policy and, therefore, the John Deere policy provided primary coverage to Thomas for any liability he may have

incurred while test-driving the vehicle owned by Rock River Ford; (2) the Allstate policy provided excess coverage to Thomas under the same factual circumstances; and (3) an escape clause contained in the John Deere policy, which provided that John Deere's coverage does not apply when a customer has other insurance in an amount equal to what is required by Illinois' mandatory insurance law, was unenforceable. On September 19, 1996, Gossett filed a counterclaim for declaratory judgment, arguing that the John Deere policy provided a liability limit in the amount of $500,000, the Allstate policy provided a liability limit in the amount of $50,000, and the escape clause in the John Deere policy was unenforceable.

On April 25, 1997, John Deere, Allstate, Thomas and Gossett filed cross-motions for summary judgment. On June 19, 1997, the trial court denied John Deere's cross-motion for summary judgment and granted Allstate's, Thomas' and Gossett's motions for summary judgment. The trial court specifically found that Thomas was an insured under the John Deere policy, the John Deere policy provided primary coverage to Thomas in the amount of $500,000, the Allstate policy provided excess coverage to Thomas in the amount of $50,000 and the John Deere policy contained an unenforceable escape clause. This appeal followed.

On April 22, 1998, Allstate and Thomas filed a motion in this court for leave to cite additional authority, which we granted. In the motion, Allstate and Thomas argued that our supreme court's decision in *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240 (1998), "directly addresses" the issue of whether the John Deere policy provided coverage for permissive users of automobiles owned by car dealerships. The *State Farm* court held that the Illinois Vehicle Code mandates that garage insurance policies contain an omnibus clause that provides primary coverage "insuring those driving a vehicle with the owner's permission." *State Farm*, 182 Ill. 2d at 245-46.

During oral arguments before this court on April 29, 1998, John Deere acknowledged that "in light of the *State Farm* holding," it owed Thomas a "full and unequivocal defense in the *Gossett* lawsuit." Because John Deere's concession has mooted its first two arguments on appeal—that Thomas is not an insured under the terms of the John Deere policy and Illinois law does not require automobile dealers to provide coverage to permissive users of their insured autos—we need only address John Deere's argument regarding the amount of coverage pursuant to the policy issued to Rock River Ford.

John Deere contends that even though Thomas is an insured under the policy, the amount of liability coverage, as "contemplated by the

terms of the John Deere policy" and as set forth in the Illinois Vehicle Code (625 ILCS 5/7—203, 7—601 (West 1994)), should be "capped" at "$20,000/$40,000" with respect to the *Gossett* lawsuit. Allstate, Thomas and Gossett contend that because the John Deere policy clearly provides liability coverage of $500,000 per accident for garage operations in excess of the mandatory $20,000/$40,000 requirement of the Code, John Deere and Rock River Ford are "bound to these higher limits."

Gossett specifically argues that John Deere's assertion "that the maximum exposure of John Deere is $20,000 or $100,000" is contrary to the certificate of insurance John Deere filed with the Secretary of State by which it "intended to convince the Secretary of State that Rock River had 'all' Rock River automobiles covered and that the coverage 'exceeded' the minimum requirements" of $100,000 for bodily injury to, or death of, any person and $300,000 for bodily injury to, or death of, two or more persons in any one accident, as set forth in section 5—101(b)(6) of the Code (625 ILCS 5/5—101(b)(6) (West 1994)). John Deere counters that its certificate of insurance is "merely" proof that Rock River procured a general liability insurance policy and that the "liability limits covering *the location* where Rock River was doing business was $500,000." (Emphasis in original.) According to John Deere, the certificate of insurance "neither affirmatively nor negatively modifies the coverages afforded by the John Deere policy," and there is "absolutely nothing contained in the certificate *** that addresses what coverage, if any, is afforded *permissive users* of Rock River's vehicles." (Emphasis added.)

■ ■ "The interpretation of an insurance policy is a question of law properly decided on a motion for summary judgment." *Steinberg v. Universal Underwriters Insurance Co.*, 272 Ill. App. 3d 79, 81, 650 N.E.2d 14 (1995). If the terms of an insurance policy are ambiguous, it must be construed in favor of the insured; however, if the terms are unambiguous, there is no need for construction, and the policy will be enforced as written unless it contravenes public policy. *Illinois Farmers Insurance Co. v. Cisco*, 278 Ill. App. 3d 1022, 1025, 664 N.E.2d 235 (1996). Review of an order granting summary judgment is *de novo*. *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 285 Ill. App. 3d 115, 120, 674 N.E.2d 52 (1996). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

■ The Illinois Vehicle Code (Code) requires that owners of motor vehicles acquire liability insurance covering a vehicle in an amount "no less than the minimum amounts set forth *** under Section

7—203 of this Code." 625 ILCS 5/7—601(a) (West 1994). Section 7—203 of the Code provides that the mandatory minimum limits of liability insurance for motor vehicles shall be in the amount of not less than $20,000 for the death or injury of any one person in any one accident, and $40,000 for the death or injury of two or more persons in any one accident. 625 ILCS 5/7—203 (West 1994).

■ Section 5—101(b)(6) of the Code applicable to new vehicle dealers (the Illinois New Car Dealers Licensing Act), requires:

> "A statement that the applicant has complied with the appropriate liability requirement. A Certificate of Insurance *** shall be included with each application covering each location at which he proposes to act as a new vehicle dealer. The policy [of insurance] must provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, any person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, ***." 625 ILCS 5/5—101(b)(6) (West 1994).

The "Illinois Used Car Dealers Licensing Act" (625 ILCS 5/5—102(b)(4) (West 1994)) contains a provision identical to that in the Illinois New Car Dealers Licensing Act. Section 7—317 of the Code states that a vehicle owner's liability insurance policy:

> "1. Shall designate by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is thereby intended to be granted;
>
> 2. Shall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured[.]" 625 ILCS 5/7—317(b)(1), (b)(2) (West 1994).

■ A plain reading of these Code sections reveals that the legislature intended that the amount of liability insurance that must be carried on a particular automobile is not determined by the operator of the automobile but, rather, the automobile itself. Therefore, the amount of liability insurance required by the Code for an automobile should not change according to the identity of the person who is driving the automobile at the time an accident occurs. See *State Farm*, 182 Ill. 2d at 246 (holding that "pursuant to custom in the insurance industry, primary liability is generally placed on the insurer of the *owner* of an automobile rather than on the insurer of the *operator*" (emphasis added)). To hold otherwise would defeat the public policy considerations that motivated the enactment of the New and Used Car Dealers Licensing Acts, which mandate that automobile dealerships "must provide liability coverage in the minimum amounts" of $100,000/$300,000 (625 ILCS 5/5—101(b)(6), 5—102(b)(4) (West 1994)), because such a holding would illogically mandate a higher limit of liability coverage when an automobile dealership's *employee* is driving the insured automobile as an agent of the dealership, yet

would not apply to the *customer* of the dealership permissively test driving the same automobile. We therefore hold that the Code was intended to apply to customers/permissive users like Thomas who expose the public to a risk when they test-drive vehicles, while at the same time perform acts that serve to increase the commercial success of the dealership. See *State Farm*, 285 Ill. App. 3d at 121 (holding that the purpose of the Code is the protection of the public, and "by permitting customers to test-drive its vehicles, the car dealer receives a vital benefit to the success of its business, *i.e.*, an exponential increase in the probability the permitted user will actually purchase the test-driven vehicle"). See also *Hertz Corp. v. Garrott*, 238 Ill. App. 3d 231, 239, 606 N.E.2d 219 (1992), where a rental car company rented a vehicle to a person who was involved in an accident with a third party. The rental agreement provided liability coverage limits of $100,000 per person and $300,000 per accident, whereas the mandatory insurance requirements for rental cars was $50,000 under the Code. The *Hertz* court rejected the car rental company's argument that its obligation to indemnify third parties was limited to the $50,000 amount required by statute and not the higher limits provided in its rental agreement, and held that the statute "in no way define[d] the scope of the obligation that may be assumed by the rental agency by separate agreement," and that if the rental company "wanted to provide liability protection at a level that would merely satisfy the minimum requirement under the statute, it was free to have done so in the contract." *Hertz*, 238 Ill. App. 3d at 239.

We briefly note that John Deere's reliance on *Steinberg*, in support of its assertion that there is "ample authority" for this court to hold that it is only liable for "$20,000/$40,000" coverage under its policy, is misplaced. After the *Steinberg* court held that the permissive driver who had his own insurance coverage in compliance with the minimum requirements of the Code was not "an insured" under the automobile dealership's garage policy, it commented in *dicta* that, had it found coverage under the garage policy, it would have found that the limits of such coverage were $20,000/40,000 pursuant to section 7—601 of the Code, and not $100,000/300,000 pursuant to section 5—101(b) of the Code. *Steinberg*, 272 Ill. App. 3d at 83-84. We note, however, that any statement contained in a judicial opinion which is not essential to the disposition of the case or logically necessary to the rationale for the disposition, is not authoritative. *Geer v. Kadera*, 173 Ill. 2d 398, 414, 671 N.E.2d 692 (1996).

In light of the Code's requirement that automobile dealerships provide liability coverage of at least $100,000/$300,000 for their automobiles (625 ILCS 5/5—101(b)(6), 5—102(b)(4) (West 1994)), and

our supreme court's holding in *State Farm* that "a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission" (*State Farm*, 182 Ill. 2d at 244), we reject the *dicta* in *Steinberg* and hold that the limit of the John Deere policy was at least $100,000/$300,000. Moreover, because Rock River determined that garage coverage would meet or exceed the $100,000/$300,000 coverage required by section 5—101(b), and specifically represented in its certificate of insurance that it had procured $500,000 in garage coverage, we do not accept John Deere's present attempt to limit its liability coverage amount in the *Gossett* lawsuit to either $100,000 as required by section 5—101(b) or $20,000 as required by section 7—601(a) of the Code for bodily injury sustained by a person involved in an accident. Because Rock River obligated itself to a $500,000 limit in its certificate of insurance, which it was required to file with the Secretary of State pursuant to section 5—101(b) of the Code, it cannot now be heard to deny the coverage amount it contracted for to limit the same to either $20,000 or $100,000.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LEAVITT, P.J., and GORDON, J., concur.