NO. 5-99-0379

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

ROBERT E. BROWNING and NORA BROWNING, )  Appeal from the

)  Circuit Court of

     Plaintiffs-Appellees, )  Franklin County.

)

v. )  No. 95-L-134, consolidated with

)         No. 95-MR-10

ROBERT L. PLUMLEE, UNIVERSAL )

UNDERWRITERS INSURANCE COMPANY, )

STATE FARM MUTUAL AUTOMOBILE )

INSURANCE COMPANY, STOTLAR-HERRIN )

LUMBER CO., INC., and GREG WEEKS PONTIAC )

CHEVROLET-GEO, a Missouri corporation, )

)

    Defendants )

)

(Universal Underwriters Insurance Company, )

Counterplaintiff-Appellant, and State Farm Mutual )  Honorable

Automobile Insurance Company, Counterdefendant- )  Thomas H. Sutton,

Appellee). )  Judge, presiding.

________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiffs, Robert E. Browning and Nora Browning, filed a multicount complaint arising out of a traffic accident that occurred as defendant Robert L. Plumlee was test-driving a truck owned by defendant Greg Weeks Pontiac Chevrolet-Geo (Weeks).  The parties sought a declaratory judgment to determine whether the insurance policy issued to the test driver by State Farm Mutual Automobile Insurance Company (State Farm) provided coverage for the accident or if, instead, the insurance policy issued by Universal Underwriters Insurance Company (Universal) to Weeks, the owner of the vehicle, provided coverage.  The trial court determined that Universal, as the insurer of the vehicle's owner, was primarily responsible to provide coverage for the accident and to provide a defense to Plumlee, the test driver.  

On appeal, Universal contends that the trial court should have ruled that both State Farm and Universal should provide coverage for the accident and that the amount that each company must pay for the accident should be prorated based upon the respective coverage limits of each policy.  Universal also argues that the trial court erred in finding that Universal should reimburse State Farm for its costs of defending Plumlee.  We affirm the trial court on both issues.

FACTS

On April 14, 1995, Plumlee was test-driving a pickup truck owned by Weeks.  Weeks knew that Plumlee was test-driving the vehicle and gave him permission to do so.  During the test drive, Plumlee collided with a vehicle driven by plaintiff Robert Browning.  As a result of that collision, Robert sued for his injuries, and his wife, Nora, sued for loss of consortium.

The pickup truck that Plumlee was driving was insured under a garage policy issued to Weeks by Universal.  Plumlee was covered under a personal-vehicle policy issued by State Farm.  Plumlee's policy also covered him when driving a nonowned car, such as the truck he was test-driving.  A dispute arose between the insurance companies as to which coverage was primary, which was excess, and how much coverage was available under each policy.  The Brownings, Universal, and State Farm each filed a claim for declaratory judgment and a motion for summary judgment.

On March 4, 1999, the trial court granted summary judgment in favor of the Brownings and State Farm and against Universal.  On May 6, 1999, the trial court denied Universal's motion to reconsider its March 4 ruling.  The trial court found that Universal's garage-liability policy afforded the sole primary coverage for the accident, held that State Farm's policy was excess, and entered judgment against Universal and in favor of State Farm in the amount of $7,350.41 to reimburse State Farm for its attorney fees in defending the lawsuit.  The court further ruled that the limits of Universal's policy were set at the maximum available, $500,000.  This timely appeal followed.

ANALYSIS

1.  Standard of review

Our review of an order granting or denying a motion for summary judgment is 
de novo
.  See 
Ragan v. Columbia Mutual Insurance Co.
, 183 Ill. 2d 342 (1998).  Summary judgment is proper where the pleadings, depositions, and admissions on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See 735 ILCS 5/2-1005(c) (West 1996); 
Ragan
, 183 Ill. 2d 342.

2.  Primary insurance coverage of garage insurance policy

Universal claims that the trial court incorrectly determined that it provides the sole primary coverage for the accident.  Universal points out that Plumlee had an active personal-

vehicle insurance policy which extended to his use of the truck he was test-driving and that, at most, the two policies contain clauses that are mutually repugnant and require that coverage be prorated between the parties.  State Farm counters that Illinois Supreme Court law mandates that garage policies covering car dealerships, such as the one issued by Universal herein, must provide the sole primary coverage for the dealership's test drivers.  See 
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 182 Ill. 2d 240 (1998) (
State Farm
). 

The relevant provisions in Plumlee's  State Farm policy extend coverage to Plumlee  for the use of a nonowned car, such as the truck he was test-driving.  When Plumlee was test-

driving the nonowned car with other coverage, State Farm's policy provided excess coverage.   The garage-liability policy issued to Weeks includes similar provisions.  The Universal policy provides insurance to any person using an auto covered under the policy if the use of the vehicle is within the scope of the insured's permission.  Additionally, Universal's policy provides: 

"[T]he most WE will pay is that portion of such limit needed to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place.  When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted."  

Finally, the Universal policy provides that its coverage "is primary, except it is excess" for persons using the covered vehicle with the permission of the insured, such as those test-

driving the owner's vehicles.   
 

In the 
State Farm
 case, the supreme court considered "whether a car dealer's garage insurance policy covers the liability of a separately insured customer who is involved in an accident while test-driving one of the dealer's vehicles."  
State Farm
, 182 Ill. 2d at 241.  Universal admits that the policy issued to the car dealership in 
State Farm
 "contained the same language" as found in Universal's policy in the case at bar.  However, Universal attempts to distinguish the 
State Farm
 case on the basis that the court was not asked to decide whether State Farm's policy provided coprimary coverage, which Universal claims is the issue before this court.  After a thorough review of 
State Farm
, we can easily eliminate this argument.  

In 
State Farm
, the insurance carrier for the dealership (which was Universal, the same company that insures the dealership in the case at bar) argued that although a dealership is required to provide insurance coverage for those who test-drive their cars, that coverage is necessary only when the test driver has no other insurance of his own.  See 
State Farm
, 182 Ill. 2d at 243.  The test driver, who was insured by State Farm (who also insures the driver in the instant case), collided with another vehicle.  State Farm submitted a claim to Universal for the amounts it paid to the passenger and driver of the other vehicle.  See 
State Farm
, 182 Ill. 2d at 241-42.  State Farm argued that because the test driver was legally required to have minimal insurance coverage, he fell within Universal's definition of an insured even though he had other insurance coverage.  The supreme court agreed with State Farm and found that under the Illinois Vehicle Code (the Code) (625 ILCS 5/7-317 (West 1998)), a car dealer's liability policy must provide coverage for test drivers even if those test drivers have their own insurance that covers them when they drive nonowned vehicles.  
State Farm
, 182 Ill. 2d at 245.

Finally, the court considered Universal's argument that "to the extent its policy covered [the test driver's] liability, the policy only provided excess coverage after other insurance covering [the test driver] was exhausted."  
State Farm
, 182 Ill. 2d at 246.  The court rejected the argument:

"We note that pursuant to custom in the insurance industry, primary liability is generally placed on the insurer of the owner of an automobile rather than on the insurer of the operator.  [Citation.]  Even assuming, 
arguendo
, that Universal is correct in its interpretation of the language of its garage policy, to give effect to that language would violate the public policy of this state, as defined by the General Assembly in the Code.  ***  [T]he Code mandates that the insurance policy issued by Universal provide omnibus coverage.  In the absence of any statutory language qualifying that mandate, the statute must be construed to require primary coverage."  
State Farm
, 182 Ill. 2d at 246.

Universal seeks to avoid the application of the 
State Farm
 case to the instant case by arguing that the supreme court in 
State Farm
 did not determine whether State Farm offered coprimary insurance.  First, it does not matter that the supreme court did not address the issue in the words used by Universal.  The rule is the same:  where a car dealership allows its customers to test-drive its vehicles, the car dealership is required by law to provide primary insurance coverage to the test driver, regardless of whether the test driver also has coverage.  The supreme court's finding that the dealerships by law must provide primary coverage necessarily excludes a finding that the test driver's insurance might also be coprimary.  

Second, the outcome of the decision in 
State Farm
 excludes any possibility of coprimary insurance.  In 
State Farm
, the supreme court affirmed the trial and appellate courts' rulings awarding 100% of the amount State Farm, the insurer of the driver, paid to the injured party, as a judgment against Universal, the insurer of the owner.  
State Farm
, 182 Ill. 2d at 242, 246.  If there had been any possibility of coprimary coverage with prorated liability between the two insurance companies, the supreme court could not have affirmed the judgment against Universal for 100% of the amount paid by State Farm to the parties injured by the test driver.    

Universal attempts to divert our attention away from the plain language of the 
State Farm
 decision by claiming that it "is unimaginable to think that the Supreme Court would overrule a substantial body of Illinois law [citations], without even the slightest indication that it was doing so."  Universal is incorrect.  The main case upon which Universal relies to support this argument is 
Universal Underwriters Insurance Group v. Griffin
, 287 Ill. App. 3d 61 (1997).  In 
Griffin
, the court based its decision to prorate the coverage between a car dealership's insurance company and the insurance company of a driver of a loaner vehicle in part upon the authority of 
Padilla v. Norwegian -American Hospital, Inc.
, 266 Ill. App. 3d 829 (1994), an insurance dispute based upon an underlying medical malpractice action.

The supreme court in 
State Farm
, however, instructed that even if the language of the policies can be read to require prorating, when the insurance issue deals with the responsibility for coverage between garage-insurance policies issued to car dealerships and individual-insurance policies issued to the car dealership's permissive drivers, public policy requires the garage-insurance policy to be solely primarily responsible for covering the permissive driver.  
State Farm
, 182 Ill. 2d at 246.  In other words, public policy considerations for garage-insurance policies are different than those for other types of insurance, and the rules that apply to other types of insurance do not necessarily apply to garage-insurance policies. 

Additionally, the court in 
Griffin
 rejected the public policy argument adopted by the appellate court and affirmed by the supreme court in 
State Farm
.  
Griffin
, 287 Ill. App. 3d at 74.  Therefore, since the supreme court has ruled explicitly to the contrary, 
Griffin
 is simply wrong in stating that prorating under these circumstances is allowed.  

The ruling of 
State Farm
 is clear; the garage-insurance policy of a car dealership is solely primarily responsible for covering the dealership's test drivers, regardless of coverage provided to the test drivers by their own, personal-automobile insurance policies.  Thus, the cases that Universal cites, cases finding that insurance may be prorated between the car dealership's insurer and the test driver's insurer, no longer provide an accurate statement of the law in Illinois.  

Finally, the rule that garage-insurance policies provide the sole primary coverage for those permissively driving cars owned by car dealerships has been settled in this district since 1993, when this court decided 
Madison Mutual Insurance Co. v. Universal Underwriters Group
, 251 Ill. App. 3d 13 (1993) (
Madison Mutual
).  In 
Madison Mutual
, we held that the garage-insurance policy issued by Universal provided the primary insurance coverage for the permissive driver of a car dealership's automobile.  
Madison Mutual
, 251 Ill. App. 3d at 17.  We agree with State Farm:  the law in Illinois on this subject is perfectly clear.  Insurance follows the vehicle rather than the driver; a garage-insurance policy will be construed to contain an omnibus clause insuring permissive users regardless of policy language to the contrary; and a garage-insurance policy provides primary coverage for the cars permissively driven by the car dealership's customers.  See 
State Farm
, 182 Ill. 2d at 246.   

3.  Coverage limits of Universal's policy as it applies to permissive drivers

Universal next argues that the limit of its coverage is controlled by the minimum coverage limits required by section 7-317 of the Code (625 ILCS 5/7-317 (West 1998)), specifically, $20,000 per person, $40,000 per accident, and $15,000 for property damage, even though the policy listed coverage as $500,000 per occurrence.  State Farm counters that the trial court correctly ruled that Universal's policy limit is $500,000, pursuant to the First District Appellate Court's decision in 
John Deere Insurance Co. v. Allstate Insurance Co.
, 298 Ill. App. 3d 371 (1998) (
John Deere
).  We agree with State Farm. 

The question of policy limits under a garage-insurance policy that provides primary coverage for a test driver is a question of first impression in this district.  Additionally, the court in 
State Farm
 did not have to reach this question, because the total liability was only $9,092.15, well below the minimum limits set by section 7-317.  The 
John Deere
 case has been the only case in Illinois to address this issue.  We follow the ruling in 
John Deere
, because the facts are indistinguishable from the case at bar and because the reasoning of the decision is sound.  

In 
John Deere
, the court considered a situation in which a car dealership allowed its customer to test-drive one of its vehicles.  The customer struck a third party while test-

driving the vehicle.  The limit of the dealership's garage-insurance policy, as listed in its policy of insurance, was $300,000; the customer was covered under a separate policy with limits of $50,000 per person and $100,000 per accident; and the dealership argued that its liability should be limited to the amounts required as the minimum under Illinois law: $20,000 per person and $40,000 per accident.  See 
John Deere
, 298 Ill. App. 3d at 375-76; 625 ILCS 5/7-203 (West 1998). 

The court rejected the argument of the insurance company for the dealership:

"A plain reading of these Code sections reveals that the legislature intended that the amount of liability insurance that must be carried on a particular automobile is not determined by the operator of the automobile but, rather, [by] the automobile itself.  Therefore, the amount of liability insurance required by the Code for an automobile should not change according to the identity of the person who is driving the automobile at the time an accident occurs.  [Citation.]"  
John Deere
, 298 Ill. App. 3d at 377.

In reaching this decision, the court in 
John Deere
 followed our supreme court in 
State Farm
.  See 
John Deere
, 298 Ill. App. 3d at 379.  The 
John Deere
 court held, "[T]he Code was intended to apply to customers/permissive users *** who expose the public to a risk when they test[-]drive vehicles[] while at the same time perform acts that serve to increase the commercial success of the dealership."  
John Deere
, 298 Ill. App. 3d at 378.  The court also rejected the attempt of the insurer of the dealership to limit its liability for test drivers to the minimum level of coverage required by law, when others covered under the garage policy received coverage of $300,000.  See 
John Deere
, 298 Ill. App. 3d at 379.

We follow the ruling in 
John Deere
 and affirm the trial court's finding that Universal's policy limit is the amount stated in its policy of insurance, $500,000.  Just as the court found in 
John Deere
, we find that because Universal obligated itself to a limit of $500,000 in its policy of insurance, it cannot now escape that level of coverage by arguing that the legal minimum level of insurance applies.  
John Deere
, 298 Ill. App. 3d at 379.

CONCLUSION

We affirm the trial court's entry of summary judgment in favor of the Brownings and State Farm and against Universal.  

Affirmed.  

KUEHN and MAAG, JJ., concur.