Docket No. 103816.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *et al.* (State Farm Mutual Automobile Insurance Company, Appellant) v. ILLINOIS FARMERS INSURANCE COMPANY *et al.*, Appellees.

*Opinion filed September 20, 2007.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

The issue in this case is whether the "step-down" provisions, which reduce the policy limits for permissive users, of several automobile liability policies issued by Illinois Farmers Insurance Company and one of it subsidiaries, Mid-Century Insurance Company (Farmers), to Illinois policyholders are void and unenforceable because they violate Illinois public policy. The trial court found the "step-down" provisions were contrary to public policy and, therefore, void and unenforceable. The appellate court found the "step-down" provisions are not contrary to public policy and reversed the trial court on this issue. 368 Ill. App. 3d 914. We granted the petition for

leave to appeal by State Farm Mutual Automobile Insurance Company. 210 Ill. 2d R. 315. For the reasons that follow, the judgment of the appellate court is affirmed in part and vacated in part, and the matter is remanded to the trial court.

## BACKGROUND

State Farm filed its second amended complaint seeking declaratory, injunctive and monetary relief from Farmers with respect to the step-down provisions contained in Farmers' automobile liability policies issued to Illinois policyholders. The first four counts deal with money State Farm spent covering losses after Farmers invoked its step-down provisions in four separate and distinct situations, each of which is covered in one of the first four counts. Farmers' step-down provisions reduce the policy limits to the minimum liability limits required under sections 7–203 and 7–317(b) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7–203, 7–317(b) (West 2002)) when the insured's vehicle is being operated by a permissive user who is neither a family member residing in the insured's household or a listed driver. Section 7–203 and section 7–317(b)(3) require every liability insurance policy issued to provide coverage not less than $20,000 for the death or bodily injury of any one person, $40,000 for the death or bodily injury of two or more persons, and $15,000 for property damage occurring in any one motor vehicle accident. 625 ILCS 5/7–203, 7–317(b)(3) (West 2002).

Farmers filed a motion to dismiss counts I through IV of State Farm's complaint, arguing that the step-down provisions contained in its policies are clear and unambiguous and that the reimbursement sought by State Farm is an impermissible direct action. In response, State Farm filed a motion for partial summary judgment on counts I through IV, arguing that the step-down provisions in Farmers' polices were contrary to Illinois public policy and therefore void and unenforceable. The trial court denied Farmers' motion to dismiss, granted State Farm's motion for partial summary judgment as to counts I through IV of the complaint on the public policy issue only, made a written finding there was no just reason to delay the enforcement or appeal or both of the order granting State Farm's motion for partial summary judgment pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), and stayed all proceedings pending the resolution of the public policy issue on appeal.

On appeal, in addition to briefing the public policy issue, Farmers briefed the ambiguity and direct action issues raised in the trial court in its motion to dismiss. State Farm moved to strike the ambiguity and direct action issues from Farmer's brief, arguing that the trial court's Rule 304(a) finding was specifically limited to the public policy issue. The appellate court denied State Farm's motion to strike holding that the ambiguity and direct action issues were properly before that court.

After the appellate court found Farmers' step-down provisions are not contrary to Illinois public policy and are enforceable, it reversed the trial court's order granting the motion for partial summary judgment and remanded the cause for further proceedings. 368 Ill. App. 3d at 927. Additionally, the appellate court found that State Farm's actions against Farmers were not impermissible direct actions under Illinois law and that Farmers' step-down provisions were clear and unambiguous as a matter of law. 368 Ill. App. 3d at 921-22. We granted State Farm's petition for leave to appeal (210 Ill. 2d R. 315). In addition, we allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of State Farm.


ANALYSIS

Standard of Review

Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 127-28 (2005). Whether summary judgment was appropriate is a matter we review *de novo. General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002). In addition, the construction of provisions contained in an insurance policy is a question of law reviewed *de novo. Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001), citing *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80 (1997).


Public Policy

State Farm argues that the step-down provisions contained in Farmer's policies violate Illinois' public policy and are therefore void

-3-

and unenforceable. The terms contained in an insurance policy will be applied as written unless those terms are contrary to public policy. *Illinois Farmers Insurance Co. v. Cisco*, 178 Ill. 2d 386, 392 (1997); *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423 (1980). The public policy of this state is reflected in its constitution, statutes, and judicial decisions. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989); *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 72 (1983). Terms of an insurance policy that conflict with a statute are void. *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 372 (2001); *Cisco*, 178 Ill. 2d at 392. Additionally, terms of an insurance policy cannot circumvent the underlying purpose of a statute in force at the time of the policy's issuance. *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 372 (2001); *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 483 (1997).

We are guided by established principles of statutory construction in determining whether the legislative mandates of this state are violated by Farmers' step-down provisions. The cardinal rule of statutory construction, and the one to which all other cannons and rules must yield, is to ascertain and give effect to the true intent and meaning of the legislature. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 134 (2005), citing *Country Mutual Insurance Co. v. Teachers Insurance Co.*, 195 Ill. 2d 322, 330 (2001). The most reliable indicator of legislative intent is found in the language of the statute. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320 (2003), citing *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). Statutory language is afforded its plain and ordinary meaning. *Midstate Siding & Window Co.*, 204 Ill. 2d at 320, citing *Michigan Avenue National Bank*, 191 Ill. 2d at 504.

With these principles in mind, we now turn to the statutory pronouncements of our legislature. Section 7–601(a) of the Illinois Safety and Family Financial Responsibility Law, in pertinent part, provides:

> "No person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register, or maintain registration of, a motor vehicle designed

to be used on a public highway unless the motor vehicle is covered by a liability insurance policy.

The insurance policy shall be issued in amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 7–203 of this Code, and shall be issued in accordance with the requirements of Sections 143a and 143a–2 of the Illinois Insurance Code, as amended." 625 ILCS 5/7–601(a) (West 2002).

Section 7–203 requires every liability insurance policy issued to provide coverage of not less than $20,000 for the death or bodily injury of any one person, $40,000 for the death or bodily injury of two or more persons, and $15,000 for property damage occurring in any one motor vehicle accident. 625 ILCS 5/7–203 (West 2002).

In addition, liability insurance required by section 7–601 must comply with the requirements of section 7–317(b)(2) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7–317(b)(2) (West 2002)). Section 7–317(b)(2) requires an owner's policy of liability insurance to insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured. 625 ILCS 5/7–317(b)(2) (West 2002). Provisions which extend liability coverage to permissive users are referred to as "omnibus clauses" (*Progressive Universal Insurance Co. of Illinois*, 215 Ill. 2d at 128), and our court has held that such a clause must be read into every liability insurance policy (*State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240, 243-44 (1998)).

Section 7–317(b)(3) of the Illinois Safety and Family Financial Responsibility Law requires every owner's policy of liability insurance to "insure every named insured and any other person using or responsible for the use of any motor vehicle owned by the named insured and used by such other person with the express or implied permission of the named insured *** to the extent and aggregate amount of $20,000 for bodily injury to or death of one person as a result of any one accident and, subject to such limit as to one person, the amount of $40,000 for bodily injury to or death of all persons as a result of any one accident and the amount of $15,000 for damage to

property of others as a result of any one accident. 625 ILCS 5/7–317(b)(3) (West 2002).

We find nothing in the foregoing statutory language to support State Farm's contention that a liability insurance policy providing the named insured with coverage in excess of the statutory minimum required by section 7–203 must provide the same level of coverage to permissive users. Contrast this with section 143a–2(4) of the Illinois Insurance Code, incorporated into section 7–601(a) of the Illinois Safety and Family Financial Responsibility Law by reference, which prohibits the issuance of a liability insurance policy issued on or after July 1, 1983, "unless underinsured motorist coverage is included in such policy in an amount equal to the total amount of uninsured motorist coverage in that policy where such uninsured motorist coverage exceeds the limits set forth in Section 7–203 of the Illinois Vehicle Code." 215 ILCS 5/143a–2(4) (West 2002). The language contained in section 143a–2(4) of the Illinois Insurance Code shows that when the legislature intends different types of coverage in excess of the minimum statutory requirements mandated by section 7–203 of the Illinois Safety and Family Financial Responsibility Law to be the same, it chooses plain, unambiguous language to indicate its intent.

Previously, this court has held that the principal purpose behind Illinois' mandatory liability insurance requirement and its omnibus provision "is to protect the public by securing payment of their damages." *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co*., 215 Ill. 2d 121, 129 (2005); *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 376 (2001). Sections 7–203 and 7–317(b)(3) of the Illinois Safety and Family Financial Responsibility Law mandate that liability insurance policies provide $20,000/$40,000/$15,000 coverage for the named insured and permissive users of the named insured's vehicle. By setting the minimum coverage limits at $20,000/$40,000/$15,000, we assume that the legislature has decided that this amount of coverage is sufficient to protect members of the public and secure payment for damages they may sustain.

Because we find nothing in the statutory pronouncements of our legislature prohibiting Farmers' step-downs and because Farmers' policies provide coverage to the named insured and permissive users of the named insured's vehicle in an amount determined by the

legislature to be sufficient to accomplish the principal purpose behind Illinois' mandatory liability insurance requirements and its omnibus provisions, we cannot say that the policies issued by Farmers in this case are contrary to the statutory pronouncements of our legislature or the underlying purpose of the Illinois Safety and Family Financial Responsibility Law.

State Farm argues, nevertheless, that the public policy considerations underlying Illinois' mandatory insurance laws as construed in our decisions in *State Farm Mutual Insurance Co. v. Smith*, 197 Ill. 2d 369 (2001), *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121 (2005), and *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240 (1998), along with the appellate court decisions in *John Deere Insurance Co. v. Allstate Insurance Co.*, 298 Ill. App. 3d 371 (1998), *Fuller v. Snyder*, 323 Ill. App. 3d 303 (2001), and *Browning v. Plumlee*, 316 Ill. App. 3d 738 (2000), prohibit Farmers' step-down provisions. We disagree.

In *Smith* and *Progressive* this court was called upon to determine whether complete exclusions from liability insurance policies violated Illinois public policy. In *Smith*, Maurice Barnes, accompanied by Smith, drove to Harrah's Casino, where he allowed Harrah's valet service to park his vehicle. When Barnes and Smith left Harrah's, Fisher, a valet driver employed by Harrah's, retrieved Barnes' vehicle. As Smith entered the passenger door, Barnes' vehicle rolled backwards, striking Smith, which knocked her to the ground causing her injury. *Smith*, 197 Ill. 2d at 371. At the time of the accident, Barnes' vehicle was insured under a policy issued by State Farm. State Farm's policy contained a "car business exclusion clause." The exclusion read: " 'THERE IS NO COVERAGE: 1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS: *** b. BEING REPAIRED, SERVICED OR USED BY ANY ***PERSON*** EMPLOYED OR ENGAGED IN ANY WAY IN A ***CAR BUSINESS***.' " (Emphasis in original.) *Smith*, 197 Ill. 2d at 372-73. State Farm defined car business as " 'a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers.' " *Smith*, 197 Ill. 2d at 373. We held that when a vehicle's "owner gives his vehicle to a person engaged in an automobile business ***, the owner is giving that person express or

implied permission to use the vehicle." *Smith*, 197 Ill. 2d at 374. We went on to say that State Farm's car business exclusion violated Illinois public policy as expressed in section 7–317(b)(2) because "a provision written into an insurance policy that excludes coverage for persons engaged in an automobile business necessarily excludes coverage for persons who are using an insured's vehicle with the insured's express or implied permission." *Smith*, 197 Ill. 2d at 374.

In *Progressive*, Shirley Abbinante owned a vehicle insured under a policy issued by Progressive. Abbinante allowed her son, Ronald, to use the insured vehicle to deliver pizzas for his employer. Ronald was compensated by a flat fee for each pizza he delivered. During one of his deliveries, Ronald struck a pedestrian, Lavit, who sustained severe injuries as a result of the accident. *Progressive*, 215 Ill. 2d at 124. Progressive's policy contained a "food delivery exclusion." The exclusion stated that coverage under the policy did not apply to bodily injury or property damage while an insured vehicle was " 'being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of *** food, or any other products.' "*Progressive*, 215 Ill. 2d at 125.

We upheld the "food delivery exclusion" against attack that it violated public policy (*Progressive*, 215 Ill. 2d at 134) and stated: "Because the requirement to maintain liability insurance is statutory in origin, any restrictions on the insurance required to comply with the law must also emanate from our statutes." *Progressive*, 215 Ill. 2d at 136. We said that the legislature could easily have prohibited insurers from excluding certain risks in liability insurance policies but it chose not to do so. *Progressive*, 215 Ill. 2d at 138. *Smith* was distinguished because the exclusion at issue in *Smith* only excluded permissive users while engaged in a car business but the named insured was free to engage in a car business without compromising his liability coverage. *Progressive*, 215 Ill. 2d at 133. We believe *Smith* and *Progressive* are inapplicable to the facts in this case. Those cases dealt with equal treatment with regard to coverage for owners and permissive drivers, not liability limits. Here the disputed issue is whether the limits of coverage provided to a permissive user must be the same as the limits of coverage provided to the owner of the vehicle.

The remaining cases cited by State Farm involve interpretations of the car dealer licensing provisions of the Motor Vehicle Code (625

ILCS 5/5–100 *et seq.* (West 2002)). Section 5–101(b)(6) of the Code provides:

> "A Certificate of Insurance *** shall be included with each application ***. The policy must provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, any person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, and $50,000 for damage to property." 625 ILCS 5/5–101(b)(6) (West 2002).

Section 5–102(b)(4) provides an identical licensing requirement for dealers of used automobiles. 625 ILCS 5/5–102(b)(4) (West 2002).

In *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240 (1998), the question before this court was "whether a car dealer's garage policy covers the liability of a separately insured customer who is involved in an accident while test-driving one of the dealer's vehicles." *State Farm*, 182 Ill. 2d at 241. Joyce Pontiac, a car dealer, allowed Luckhart to test-drive one of its vehicles. During this test-drive, Luckhart negligently collided with another vehicle owned by Carter and operated by Calinee, both of whom sustained personal injury as a result of the collision. Joyce Pontiac was insured under a garage policy issued by Universal. Luckhart was insured under a policy issued by State Farm, which paid a total of $9,092.15 to Carter and Calinee for personal injuries and property damage they sustained in the collision. *State Farm*, 182 Ill. 2d at 241. Thereafter, State Farm sought reimbursement from Universal, alleging that Universal's policy afforded primary coverage to Luckhart while test-driving Joyce Pontiac's vehicle. Under the terms of the garage policy issued to Joyce, Universal agreed to provide coverage to any person " 'required by law to be an INSURED' " while using a covered automobile within the scope of Joyce's permission. *State Farm*, 182 Ill. 2d at 242. Universal argued that a test-driver was only "required by law" to be insured if the test-driver did not have a liability insurance policy. *State Farm*, 182 Ill. 2d at 243.

We held that the omnibus clause contained in section 7–317 of the Illinois Safety and Family Financial Responsibility Law applies throughout the Code and thus applies to the mandatory insurance requirement set forth in section 7–601. *State Farm*, 182 Ill. 2d at 244-45. Therefore Luckhart, a permissive user, was required by law to be

an insured under Universal's policy. *State Farm*, 182 Ill. 2d at 245. Universal also argued that to the extent that its policy covered Luckhart, the policy only provided excess coverage after other insurance covering Luckhart was exhausted. We stated that "pursuant to custom in the insurance industry, primary liability is generally placed on the insurer of the owner of an automobile rather than on the insurer of the operator." *State Farm*, 182 Ill. 2d at 246.

In *State Farm* we were not called upon to determine what level of omnibus coverage was required to be provided to permissive users of a car dealer's automobile. The damages in that case totaled $9,092.15. Therefore, whether the permissive user of a car dealer's automobile was required to be insured at $20,000/$40,000/$15,000 under the Illinois Safety and Family Financial Responsibility Law or $100,000/$300,000/$50,000 under the car dealer licensing provisions of the Code, the car dealer's insurer was primarily liable for the entire amount of damages. State Farm argues that this question, left unresolved in *State Farm*, was answered in the appellate court decisions of *John Deere Insurance Co. v. Allstate Insurance Co.*, 298 Ill. App. 3d 371 (1998), *Browning v. Plumlee*, 316 Ill. App. 3d 738 (2000), and *Fuller v. Snyder*, 323 Ill. App. 3d 303 (2001). Additionally, State Farm contends that John *Deer*, *Brownlee*, and *Fuller* all rejected attempts made by insurers to step-down coverage in car-dealership cases and that Farmers' attempt to step-down coverage should therefore be rejected here.

In *John Deere*, Rock River Ford (Rock River) allowed Thomas to test-drive one of its vehicles. During the test drive, Thomas struck and injured a pedestrian named Gossett. *John Deere*, 298 Ill. App. 3d at 373. Thomas was insured under a liability insurance policy issued by Allstate, which provided excess coverage in the amount of $50,000 per person and $100,000 per occurrence when a nonowned vehicle was being operated by one of its insured. *John Deere*, 298 Ill. App. 3d at 374. Rock River was insured under a garage policy issued by John Deere in the amount of $500,000. *John Deere*, 298 Ill. App. 3d at 373. Under the terms of its policy, John Deere attempted to exclude liability coverage afforded to Rock River's customers unless (1) the customer had no other available insurance (whether primary, excess, or contingent), in which case the customer would be insured but only up to the compulsory or financial responsibility law limits where the

covered "auto" is principally garaged, or (2) the customer had other available insurance (whether primary, excess, or contingent) in an amount less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, in which case the customer would be insured only up to the amount by which the compulsory or financial responsibility law limits exceeded the limits of their other insurance. *John Deere*, 298 Ill. App. 3d at 373-74. John Deere supplied the Illinois Secretary of State with a certificate of insurance on behalf of Rock River, which indicated that Rock River's policy limits were set at $500,000. *John Deere*, 298 Ill. App. 3d at 373. On appeal, John Deere conceded that our decision in *State Farm* required it to provide primary liability insurance to permissive users, such as Thomas, under the garage policy issued to Rock River. Therefore, the appellate court was called upon only to decide what amount of coverage was required by the Code. *John Deere*, 298 Ill. App. 3d at 375.

The appellate court cited section 7–203 of the Illinois Safety and Family Financial Responsibility Law, which requires minimum limits of liability insurance for an automobile in the amount of $20,000/$40,000/$15,000 (625 ILCS 5/7–203 (West 1994)) and sections 5–101(b)(6) and 5–102(b)(4) (625 ILCS 5/5–101(b)(6), 5–102(b)(4) (West 1994)) from the Code which requires minimum limits of liability insurance of $100,000/$300,000/$50,000. The court then stated:

> "A plain reading of these Code sections reveals that the legislature intended that the amount of liability insurance which must be carried on a particular automobile is not determined by the operator of the automobile but, rather, the automobile itself. Therefore, the amount of liability insurance required by the Code for an automobile should not change according to the identity of the person who is driving the automobile at the time an accident occurs. [Citations.] To hold otherwise would defeat the public policy considerations that motivated the enactment of the New and Used Car Dealers Licensing Acts ***, because such a holding would illogically mandate a higher limit of liability coverage when an automobile dealership's *employee* is driving the insured automobile as an agent of the dealership, yet would not apply

-11-

to the *customer* of the dealership permissively test driving the same automobile." (Emphases in original.) *John Deere*, 298 Ill. App. 3d at 377-78.

The appellate court held that John Deere's liability under the garage policy issued to Rock River was at least $100,000/$300,000/$50,000. However, the court determined that John Deere could not limit its liability to this amount because it had specifically represented in its certificate of insurance filed with the Secretary of State that it insured Rock River under a garage policy which provided $500,000 in coverage and therefore John Deere was bound by its $500,000 policy limits as certified to the Secretary of State. *John Deere*, 298 Ill. App. 3d at 379.

In *Browning*, Weeks Pontiac-Chevrolet (Weeks) allowed a customer named Plumlee to test-drive one of its vehicles. During the test-drive Plumlee collided with a vehicle driven by Browning. Plumlee was insured under a policy issued by State Farm. Weeks was insured under a garage policy issued by Universal Underwriters (Universal) in the amount of $500,000. *Browning*, 316 Ill. App. 3d at 739. Under the terms of the garage policy issued to Weeks, Universal attempted to reduce the liability limits available to permissive users to the "limit needed to comply with the minimum limits provision law." Additionally, Universal attempted to provide only excess coverage in the event that a permissive user was insured under another insurance policy. *Browning*, 316 Ill. App. 3d at 741.

The appellate court first held that our decision in *State Farm* and its decision in *Madison Mutual Insurance Co. v. Universal Underwriters Group*, 251 Ill. App. 3d 13 (1993), required Universal to provide primary coverage to permissive users under the policy issued to Weeks. *Browning*, 316 Ill. App. 3d at 743. Next, the court determined that Universal was required to provide permissive users under the garage policy issued to Weeks with coverage in the amount of $500,000 (*Browning*, 316 Ill. App. 3d at 745) and stated that it was relying on the reasoning supplied by the court in *John Deere*, 298 Ill. App. 3d 371, to resolve the issue of what level of omnibus coverage is required (*Browning*, 316 Ill. App. 3d at 744-45).

In *Fuller*, Hurley Dodge (Hurley) was repairing a vehicle owned by a customer named Snyder. Snyder was using Hurley's loaner vehicle when he collided with a vehicle being driven by Fuller. Snyder

was insured under a liability policy issued by Allstate with coverage in the amount of $100,000/$300,000/$50,000. Hurley was insured under a garage policy issued by Universal Underwriters (Universal) in the amount of $500,000. *Fuller*, 323 Ill. App. 3d at 305. Under the terms of the garage policy issued to Hurley, Universal attempted to reduce the liability limits available to permissive users to the " 'limit needed to comply with the minimum limits provision law.' " (Emphasis omitted.) *Fuller*, 323 Ill. App. 3d at 305-06. Additionally, Universal attempted to provide only excess coverage in the event that a permissive user was insured under another insurance policy. *Fuller*, 323 Ill. App. 3d at 306. The appellate court, relying on our decision in *Smith*, held that Universal's attempt to provide only excess liability insurance to permissive users insured under another insurance policy was contrary to public policy and therefore unenforceable. *Fuller*, 323 Ill. App. 3d at 307. Next, the appellate court held that Universal was required to provide Snyder with omnibus coverage in the amount of $100,000/$300,000/$50,000 relying on *John Deere*, 298 Ill. App. 3d at 309. The court also found that sections 5–101(b)(6) and 5–102(b)(4) of the Code were specifically applicable to car dealerships and should control the issue of minimum policy limits. *Fuller*, 323 Ill. App. 3d at 308-09. The dissent pointed out that the Code did not contain an omnibus provision and that the omnibus provision contained in section 7–317, which applies throughout the Code, only requires coverage to be provided in the amount of $20,000/$40,000/$15,000. *Fuller*, 323 Ill. App. 3d at 309 (Cook, J., dissenting).

State Farm argues that it was not the car dealer provisions that persuaded the appellate court in *John Deere* to hold that the insurer of the car dealer was obligated to provide the full policy limits to permissive users. It argues that the primary holding of *John Deere* is that liability limits follow the vehicle and cannot be changed based on the operator and that the car dealer provisions involved in *John Deere*, *Browning* and *Fuller* are irrelevant. In our discussion of *John Deere* earlier in this opinion, we quoted at length from that opinion and mention here only this quote: "To hold otherwise would defeat the public policy considerations that motivated the enactment of the New and Used Car Dealers Licensing Acts ***, because such a holding would illogically mandate a higher limit of liability coverage

-13-

when an automobile dealership's *employee* is driving the insured automobile as an agent of the dealership, yet would not apply to the *customer* of the dealership permissively test driving the same automobile." (Emphases in original.) *John Deere*, 298 Ill. App. 3d at 377-78. The *Fuller* court stated: "Sections 5–101(b)(6) and 5–102(b)(4) should control the issue of minimum policy limits because those sections are more specifically applicable to car dealerships than section 7–601." *Fuller*, 323 Ill. App. 3d at 308-09. Contrary to State Farms' contention, we believe that *John Deere*, *Browning* and *Fuller* are all based in large part on the car dealer provisions, which are not involved in this case.

For the foregoing reason, we hold that neither the statutory pronouncements of our legislature nor the Illinois decisions relied upon by State Farm prohibit the step-down provisions in Farmers' policies. State Farm also argues, however, that Farmers' step-downs adversely affect the overwhelming majority of Illinois residents and are contrary to public policy. The legislature is vested with the power to enact the laws and if the legislation as enacted "seems to operate in certain cases unjustly or inappropriately, the appeal must be to the General Assembly, and not to the court." *People v. Garner*, 147 Ill. 2d 467, 476 (1992). We note that the General Assembly recently passed Senate Bill 1208, which deals with the insurance issue involved in this case. The Governor signed the bill into law as Public Act 95–395, with an effective date of January 1, 2008. This Act, which creates new section 143.13a of the Illinois Insurance Code (215 ILCS 5/143.13a), now mandates that "any policy of private passenger automobile insurance must provide the same limits of *** coverage to all persons insured under that policy, whether or not an insured person is a named insured or permissive user under the policy." As we observed earlier in this opinion, when the legislature intends different types of coverage in excess of the minimum statutory requirements mandated by section 7–203 of the Illinois Safety and Family Financial Responsibility Law to be the same, it chooses plain, unambiguous language to indicate its intent. It has now done so, effective January 1, 2008.

Ambiguity and Direct Action

As noted earlier, Farmers filed a motion to dismiss State Farm's complaint, arguing that the step-down provisions contained in its policies are clear and unambiguous and that the reimbursement sought by State Farm is an impermissible direct action. The trial court denied Farmers' motion to dismiss. On appeal, State Farm moved to strike the ambiguity and direct action issues from Farmers' brief. The appellate court denied State Farm's motion to strike, holding that the ambiguity and direct action issues were properly before that court and it decided these issues.

State Farm argues that the trial court's Rule 304(a) (210 Ill. 2d R. 304(a)) finding in its order granting Sates Farm's motion for partial summary judgment was limited to the public policy issue and therefore the appellate court lacked jurisdiction to rule on the ambiguity and direct action issues. Farmers argues that this court should not disregard these issues, which were briefed and argued "on summary judgment." It is well established that the jurisdiction of appellate courts is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions (*In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989)), none of which are present in this case. It is also well settled in this state that a trial court's denial of a motion to dismiss is an interlocutory order that is not final and appealable. *Chicago Housing Authority v. Abrams*, 409 Ill. 226, 229 (1951). Because the appellate court lacked jurisdiction to review the ambiguity and direct action issues, those potion`s of the appellate court's decision are vacated.

CONCLUSION

For the reasons set forth above, the judgment of the appellate court is affirmed in part and vacated in part, and the matter is remanded to trial court for proceedings consistent with this opinion.

*Affirmed in part and vacated in part;*
*cause remanded.*