20 December 1999

NO. 4-99-0277

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

LINCOLN LOGAN MUTUAL INSURANCE COMPANY ) Appeal from

and GRINNELL MUTUAL REINSURANCE COMPANY,) Circuit Court of

Plaintiffs-Appellees, ) De Witt County

) No. 92MR13

RODNEY E. FORNSHELL and CLAUDIA )

FORNSHELL, Administrators of the )

ESTATE OF ARTHUR FORNSHELL, Deceased )

Defendants-Appellants, )

and ) Honorable

RONALD STURGEON, ) George S. Miller,

Defendant. ) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the

court:

In November 1990, Ronald Sturgeon became involved in an altercation with Arthur Fornshell in the rest room of a local tavern.  During the altercation, Sturgeon stabbed Fornshell in the chest and abdomen with a pocketknife.  Fornshell died as a result of the wounds, and Sturgeon was convicted of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9-1(a) (now 720 ILCS 5/9-1(a) (West 1998))).

In September 1991, Fornshell's parents, Rodney and Claudia Fornshell (the Fornshells), sued Sturgeon for wrongful death and survival.  Lincoln Logan Mutual Insurance Company (Lincoln) and Grinnell Mutual Reinsurance Company (Grinnell) defended Sturgeon as part of the comprehensive personal liability coverage of his homeowner's insurance policy.  However, Lincoln and Grinnell defended Sturgeon under a reservation of rights, alleging Sturgeon was not covered under the policy due to an exclusion for intentional acts.  In January 1996, a jury awarded judgment in the Fornshells' favor.  On a posttrial motion, the trial court offered the Fornshells an 
additur
 or a new trial on all issues.  The Fornshells opted for a new trial and won another jury award in January 1998 for $174,329.43.

Meanwhile, in September 1992, Lincoln and Grinnell filed a complaint for declaratory judgment, arguing that they were not obligated to defend or indemnify Sturgeon due to a policy exclusion for intentional acts.  The exclusion stated:  "We do not cover bodily injury or property damage arising out of any act intended by an insured person whether or not the bodily injury or property damage was intended ***."  The action pro

ceeded to a bench trial in February 1999. 

Sturgeon testified that he entered Curry's Pub the night of the murder and sat on a stool next to Glenda Sears, whom he had dated for several years.  After sitting on the stool, Sturgeon was approached by Michael Edge, who claimed Sturgeon was sitting in his seat.  Sturgeon and Edge argued over the stool and Sturgeon eventually moved to another stool on the other side of Sears.  At this point, Fornshell, who was seated on the other side of Edge, leaned around Edge, pointed a finger at Sturgeon and started calling Sturgeon names.  Shortly thereafter, Sturgeon was talking to Sears when a barstool was shoved along the floor and crashed into Sturgeon's knee.  Sturgeon believed Edge shoved the stool. 

About 15 minutes after the barstool incident, Sturgeon went to the bathroom on the lower level of the bar.  To get there, Sturgeon had to walk by where Edge and Fornshell had been seated.  Sturgeon testified that he did not look and did not know whether Edge or Fornshell was sitting there when he walked by. 

Sturgeon testified that, as he walked into the rest room, Fornshell was coming out, and Fornshell struck him in the temple area.  Sturgeon testified he fell to his knees and does not remember all of the events after that.  Sturgeon did not deny stabbing Fornshell twice with his pocketknife.  Sturgeon testi

fied he was fearful during the struggle that Edge was going to jump him from behind; however, he had no recollection of Edge being in the rest room during the struggle.  Edge and Fornshell each outweighed Sturgeon.  

After the stabbing, Sturgeon walked out of the rear of the bar and threw away the pocketknife.  Sturgeon and Sears left the premises, with Sears driving.  Sturgeon did not call or ask anyone to call the police.  Sturgeon never told Sears that evening that Fornshell hit him first. 

Karen Curry testified she was part owner of Curry's Pub and Sturgeon was her brother.  She testified Fornshell shoved the barstool against Sturgeon's knee and Sturgeon appeared to be upset.  About 10 minutes after the stool incident, she saw Sturgeon walk at a fast pace toward the rest room.  Karen went downstairs and entered the men's rest room.  Karen saw Sturgeon and Fornshell facing each other, with Sturgeon holding a knife.  Apparently, Sturgeon had already stabbed Fornshell. 

Sears testified she and Sturgeon had a small disagree

ment that evening that seemed to upset him.  Sears had no knowl

edge of what happened in the rest room.  After the stabbing, Sears saw Sturgeon at the end of the bar and she asked him if he was ready to go.  He just said, "okay."  Sears and Sturgeon exited the bar and got in the car, with Sears driving.  Sears testified Sturgeon told her "he thought he might have hurt somebody or killed somebody and he might be going away to jail for a long time."  Sturgeon told Sears several times he did it "over you, over you."  Sears testified Sturgeon never complained of pain and she did not see any sign of injury on him.  Sturgeon did not tell Sears he had been attacked or hit.

Michael Edge testified that he and Sturgeon argued over the barstool.  Fornshell joined the argument and Sturgeon stated to Edge, "I don't know who your friend is but if he fucks with me again I will kill him."  About 10 to 15 minutes later, Fornshell went to the rest room.  Then, Sturgeon headed in the same direc

tion "at a very quick pace."  Edge testified Sturgeon looked very angry, with "a scowl on his face and his eyes were very wide open and bulging."  Edge went to the rest room after Sturgeon, but Fornshell had already been stabbed.

Police officer Todd Ummel testified he arrested Stur

geon after a traffic stop.  Ummel did not observe any injuries to Sturgeon and found him calm and polite during the booking.  When Ummel asked Sturgeon if he was sick or injured, Sturgeon an

swered, "no."

After consideration of briefs filed by Grinnell and the Fornshells following the trial, the trial court found:

"[T]he actions of Sturgeon against Fornshell, the decedent, were without justifiable or reasonable force and were forceful with intent to act and intent from the action to inflict bodily harm upon Fornshell."

The court also examined the Grinnell insurance policy and deter

mined that the exclusion clause for intentional acts was unambig

uous as applied to the facts of this case and effectively ex

cluded coverage.  

The Fornshells appeal, arguing that the exclusionary language in Grinnell's homeowner's policy is vague, ambiguous, and overbroad.  The Fornshells allege the language that excludes coverage for intentional acts "whether or not the bodily injury or property damage was intended" not only excludes intentional torts and crimes, but also all traditional negligence claims.  The Fornshells note that virtually all tortfeasors who embark upon a course of conduct act "intentionally" in some measure.  (For example, a child who accidentally hits a baseball through a neighbor's window "intended" to hit the baseball, but did not intend to break the window.)  Consequently, the Fornshells argue Sturgeon's liability protection is illusory because Grinnell may exclude coverage for essentially 
any
 voluntary act that results in harm.  

In construing an insurance policy, as any other con

tract, the court must ascertain the intent of the parties.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992).  To ascertain the meaning of the policy's words, the court must construe the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract.  A court must afford the policy language its plain and ordinary meaning if the words are unambiguous.  However, if the words are susceptible to more than one interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy.  
Outboard Marine Corp.
, 154 Ill. 2d at 108-09, 607 N.E.2d at 1212.

Personal liability insurance contracts typically contain exclusionary clauses for intentional or wilful miscon

duct.  An agreement to indemnify against intentional misconduct would, as a general rule, be contrary to public policy and unenforceable.  
Dixon Distributing Co. v. Hanover Insurance Co.
, 161 Ill. 2d 433, 446, 641 N.E.2d 395, 401 (1994).  Violent criminals should not be permitted to profit from their own intentional misconduct.  Furthermore, exclusions for intentional acts are necessary to help insurers set rates and supply cover

age.  If a single insured is allowed through intentional acts to consciously control risks covered by the policy, the central concept of insurance is violated.  
Aetna Casualty & Surety Co. v. Freyer
, 89 Ill. App. 3d 617, 620, 411 N.E.2d 1157, 1159 (1980).  On the other hand, public policy also favors affording compensa

tion to victims.  
University of Illinois v. Continental Casualty Co.
, 234 Ill. App. 3d 340, 358, 599 N.E.2d 1338, 1350 (1992).  Indemnity against intentional misconduct may be tolerated where it provides benefits for the victim, but not where it compensates the wrongdoer. 

The construction generally afforded to intentional act exclusions is to deny coverage where the insured has (1) intended to act 
and
 (2) specifically intended to harm a third party.  
Scudder v. Hanover Insurance Co.
, 201 Ill. App. 3d 921, 927, 559 N.E.2d 559, 562 (1990).  This construction is the most logical interpretation and best represents the parties' intentions.  If the exclusionary clause denied coverage for negligent or innocent acts as well, the clause would contradict and swallow the entire personal liability policy.  Whenever possible, courts should construe a contract so that different provisions are harmonized and not conflicting with one another.  
Snelten v. Schmidt Imple

ment Co.
, 269 Ill. App. 3d 988, 993, 647 N.E.2d 1071, 1074 (1995).

Special problems arise when an insured acts with a specific intent to harm, but does so in self-defense.  One situation is where a person negligently determines that inten

tional acts are necessary.  For example, an intruder is in the house, and the homeowner shoots and kills the intruder, only to learn that the intruder was his son.  Another situation is where a person intends to accomplish a particular result, but some additional result occurs.  For example, a person shoves someone and that person falls and is killed.  Do the intentional act exclusions apply in these situations?  When an insured acts in self-defense, he is still acting with "intent to harm."  Theoret

ically, he should then be denied coverage regardless of whether his actions were reasonable or whether he intended a particular result.  In 
Blackburn v. Johnson
, 187 Ill. App. 3d 557, 543 N.E.2d 583 (1989), this court concluded that a plaintiff in a civil case involving a stabbing death could sustain a negligence action predicated upon the negligent brandishing of a knife or the use of excessive force in a claim of self-defense.  See also 
State Farm Fire & Casualty Co. v. Leverto­n
, 289 Ill. App. 3d 855, 857, 683 N.E.2d 476, 479 (1997) (recognizing a complaint may state a claim of negligence where unreasonable use of force in self-defense is alleged).  More recent exclusionary clauses have addressed these problems by excluding coverage for "reasonably expected" damages and "criminal acts."  T. Gunn, 
The Intentional Acts Exclusion
, 71 Fla. B.J. 86, 88 n.2 (May 1997). 

The exclusionary clause in this case is problematic because it is ambiguous and purports to exclude intentional acts "whether or not the bodily injury or property damage was in

tended."  The exclusion purports to apply in two situations, one where injury or damage is intended and another where injury or damage is not intended.  We have no problem applying the exclu

sion in the first situation.  Despite the drafting, we find that the clause should be read in the way that the traditional exclu

sion was read, that is, both the 
act
 has to be intended and the 
harm
 has to be intended.  Admittedly, when an insurance clause is found to be ambiguous, it must be construed against the insurer.  
Cowan v. Insurance Co. of North America
, 22 Ill. App. 3d 883, 892, 318 N.E.2d 315, 323 (1974).  However, when possible, the clause should not be read out of existence and should be inter

preted reasonably.  See 
Cowan
, 22 Ill. App. 3d at 892-93, 318 N.E.2d at 323.  Also, the provision in question cannot be read in isolation but must be read with reference to the facts of the case at hand.  
American Family Mutual Insurance Co. v. Hinde
, 302 Ill. App. 3d 227, 232, 705 N.E.2d 956, 959 (1999).  Here, a jury convicted Sturgeon of first degree murder (
People v. Sturgeon
, No. 4-91-0645 (February 28, 1992) (unpublished order under Supreme Court Rule 23)) and Sturgeon was found liable for Fornshell's death in two civil trials.  Sturgeon's claim of self- defense was rejected by three different juries and the trial judge specifically found Sturgeon intended to inflict bodily harm upon Fornshell without legal justification.  Clearly, the parties did not intend to insure Sturgeon for first degree murder.  The policy's language may be read in conjunction with the policy

holder's reasonable expectations and the coverage intended by the insurance policy.  
Cummins v. Country Mutual Insurance Co.
, 178 Ill. 2d 474, 485, 687 N.E.2d 1021, 1027 (1997).

The Fornshells contend that this case presents a scenario of "negligence in self-defense," similar to the 
Blackburn
 case.  The Fornshells argue that Sturgeon subjectively feared Fornshell and acted unreasonably (negligently) because he misperceived the need to defend himself.  The Fornshells contend that the trial court contemplated this theory when it stated in its findings that Sturgeon killed Fornshell "without justifiable or reasonable force."

We find 
Blackburn
 distinguishable.  In 
Blackburn
, 187 Ill. App. 3d at 559, 543 N.E.2d at 584-85, the jury made a specific finding of negligence and the case did not involve the interpretation of an exclusionary clause in an insurance con

tract.  In this case,
 no finding of negligence was made and the trial judge specifically found Sturgeon's actions were "force

ful," "intentional," and committed with "an intent to commit bodily harm to Fornshell."  The trial court was not implying that Sturgeon acted negligently when it stated that Sturgeon's actions were "without justifiable or reasonable force."  At most, this language was surplusage and the court was merely stating that Sturgeon was not justified in using self-defense.  Such a finding is not relevant under this exclusion or the traditional exclu

sion. 

For the foregoing reasons, we affirm the judgment of the trial court of De Witt County.

Affirmed.   

STEIGMANN and GARMAN, JJ., concur.