FRANCIS FULLER *et al.*, Plaintiffs, v. DALE E. SNYDER, Defendant (Allstate Insurance Company, Intervenor and Plaintiff-Appellee and Counterdefendant-Appellee; Universal Underwriters Insurance Company, Intervenor and Defendant-Appellant and Counterplaintiff-Appellant).

Fourth District    No. 4—00—0253

Argued August 16, 2000.—Opinion filed June 28, 2001.

304

COOK, J., dissenting.

Stephen L. Corn (argued) and John F. Watson, both of Craig & Craig, of Mattoon, for appellant.

Michael J. Bedesky (argued), of Reed, Armstrong, Gorman, Mudge & Morrissey, P.C., of Edwardsville, for appellee.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In July 1998, Francis Fuller sued Dale Snyder for personal injuries resulting from a two-car accident. Snyder was driving a loaner vehicle owned by Hurley Dodge (Hurley), an automotive dealership. Universal Underwriters Insurance Company (Universal) insured Hurley's vehicles. Allstate Insurance Company (Allstate) provided Snyder's automobile insurance. In February 1999, Allstate filed a declaratory judgment action against Universal, seeking a declaration that Universal's garage liability insurance policy provided sole primary coverage. In November 1999, Universal filed a counterclaim for

declaratory judgment, seeking reimbursement for Allstate's prorated share of the personal injury settlement. Both Allstate and Universal filed motions for summary judgment. In January 2000, the trial court granted Allstate's motion, concluding that Universal was primarily obligated to defend Snyder and that the limits of the Universal policy were $500,000. We allowed Universal's motion to file a late notice of appeal. We affirm.

## I. BACKGROUND

On appeal, the following facts are undisputed. In September 1997, Snyder was a permissive user of a vehicle owned by Hurley when it collided with a truck being driven by Francis Fuller and containing a passenger, Charles Fuller. The collision caused property damage and personal injuries to the Fullers. Universal initially refused Allstate's tender of Snyder's defense. Allstate settled the property damage claim for $1,600. Universal settled the personal injury claims for $50,000. Allstate incurred $11,034.50 in defending Snyder.

However, Universal's brief states that Snyder was test-driving Hurley's truck while Allstate's brief notes that Hurley was repairing Snyder's own vehicle. Universal's brief cites an agreed statement of facts, which states, "Snyder, with permission, took possession as a loaner vehicle a 1992 Dodge Dakota truck owned by Hurley Dodge." Nothing in the record on appeal indicates that Snyder was test-driving. Accordingly, we consider Snyder's vehicle to have been a loaner from Hurley.

Snyder's insurance with Allstate had policy limits of $300,000 for bodily injury per person, $500,000 for bodily injury per occurrence, and $100,000 for property damage per occurrence. Allstate's policy had an "other insurance" clause that provided that its insurance would be excess over other collectible insurance.

Hurley was a named insured in Universal's $500,000 garage liability policy, which stated:

> "WE will pay all sums the INSURED legally must pay as DAMAGES *** because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD."

Universal's policy included the following in "who is an insured" under the auto hazard:

> "(4) any other person or organization required by law to be an INSURED while using an AUTO covered by this [c]overage [p]art within the scope of YOUR permission."

However, the policy provided the following limitation:

> "With respect to the AUTO HAZARD part (4) of WHO IS AN INSURED, the most WE will pay is that portion of such limit

needed to comply with the *minimum limits provision law* in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted." (Emphasis added.)

Finally, the Universal policy had an "other insurance" clause, which provided as follows:

"The insurance afforded by this [c]overage [p]art is primary, except it is excess:

\*\*\*

(2) for any person or organization under part (3) or (4) of WHO IS AN INSURED with respect to the AUTO HAZARD."

In February 1999, Allstate filed this declaratory judgment action, arguing that it was not primarily obligated to defend Snyder and seeking judgment from Universal for the costs of Snyder's defense. In October 1999, Allstate filed a motion for summary judgment. Universal also moved for summary judgment in October 1999. In November 1999, Universal filed a counterclaim against Allstate, seeking reimbursement for Allstate's prorated share of a $50,000 personal injury settlement between Universal and the Fullers. Universal also filed a motion for summary judgment on the counterclaim. In January 2000, the trial court denied both of Universal's motions for summary judgment and granted Allstate's motion. Universal appealed.

## II. ANALYSIS

### A. Standard of Review

●1 The interpretation of an insurance policy is a question of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). As a question of law, our review of the trial court's granting of summary judgment is *de novo*. *Outboard Marine*, 154 Ill. 2d at 102, 607 N.E.2d at 1209. In construing the terms of an insurance policy, a court must afford the policy language its plain and ordinary meaning if the words are unambiguous. *Lincoln Logan Mutual Insurance Co. v. Fornshell*, 309 Ill. App. 3d 479, 483, 722 N.E.2d 239, 242 (1999). We will apply unambiguous terms as written unless they contravene public policy. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 442, 692 N.E.2d 1196, 1199 (1998).

### B. Sole Primary Coverage

Universal acknowledges that it was primarily obligated to defend Snyder under the supreme court's recent holding in *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240, 695 N.E.2d 848 (1998), and our recent decision in *Pe-*

*kin Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 305 Ill. App. 3d 417, 711 N.E.2d 1227 (1999). However, Universal claims that those cases did not address the issue whether Allstate also has primary coverage as a result of mutually repugnant "other insurance" clauses in the policies.

Universal relies on the First District's opinion in *Universal Underwriters Insurance Group v. Griffin,* 287 Ill. App. 3d 61, 677 N.E.2d 1321 (1997), which predated *State Farm.* The approach in *Griffin* examined the "other insurance" clauses in each policy. *Griffin,* 287 Ill. App. 3d at 74, 677 N.E.2d at 1330. Universal's "excess-escape" clause restricted its liability to the extent that its own limits exceeded the limits of other available insurance, and the court found it to be enforceable. *Griffin,* 287 Ill. App. 3d at 75, 677 N.E.2d at 1331. Then, the court prorated liability based on policy limits. *Griffin,* 287 Ill. App. 3d at 75, 677 N.E.2d at 1331.

However, *State Farm* is controlling on this issue. In *State Farm,* Universal also asserted the "excess-escape" clause in a case that involved a permissive user of an automobile owned by a dealership. *State Farm,* 182 Ill. 2d at 246, 695 N.E.2d at 851. However, Universal's excess-escape clause was unenforceable in violation of public policy in that circumstance. Universal had to provide coverage because section 7—317 of the Illinois Vehicle Code (625 ILCS 5/7—317 (West 1998)) required its policy to contain an omnibus clause insuring those who use a vehicle with the owner's permission, and as the owner's insurer, its insurance had to be primary. *State Farm,* 182 Ill. 2d at 246, 695 N.E.2d at 851.

●2 Snyder was a permissive user of a loaner vehicle owned by Hurley and insured by Universal's garage liability policy. As in *State Farm,* Universal is required to provide primary coverage, and its excess-escape clause would not be enforceable. The Allstate policy that covered Snyder contained an enforceable "other insurance" clause that rendered its coverage excess. Thus, no incompatible enforceable "other insurance" clauses existed between the two policies, and the trial court was correct to determine that Universal's policy provided sole primary coverage.

### C. Policy Limits

●3 Universal contends that the trial court erred in finding that its policy provided $500,000 in coverage in this case. Universal asserts that the phrase in its policy, "minimum limits provision law," unambiguously refers to the mandatory insurance provision of section 7—601 of the Illinois Vehicle Code (Code) (625 ILCS 5/7—601 (West 1998)), which references the following limits in section 7—203 of the

Code (625 ILCS 5/7—203 (West 1998)): $20,000 per person, $40,000 per accident, and $15,000 for destruction of property.

We disagree because sections 5—102(b)(4) of the Code (625 ILCS 5/5—102(b)(4) (West 1998)) and 5—101(b)(6) of the Code (625 ILCS 5/5—101(b)(6) (West 1998)) require a licensed car dealer to insure a permissive user with minimum limits of $100,000/$300,000/$50,000.

Section 5—101(b)(6) states:

> "A Certificate of Insurance *** *shall* be included with each application ***. The policy *must* provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, *any* person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, and $50,000 for damage to property." (Emphasis added.) 625 ILCS 5/5—101(b)(6) (West 1998).

Section 5—102(b)(4) provides an identical licensing requirement for dealers of used automobiles.

Under the plain meaning of the Code, the liability insurance mandated by sections 5—101(b)(6) and 5—102(b)(4) of the Code encompasses auto hazard and would be a "motor vehicle liability policy," as defined in section 7—317(a) of the Code (625 ILCS 5/7—317(a) (West 1998)). This definition applies throughout the Code. *State Farm*, 182 Ill. 2d at 245, 695 N.E.2d at 850. Therefore, the omnibus clause requirement in section 7—317(b)(2) (625 ILCS 5/7—317(b)(2) (West 1998)) applies to motor vehicle liability insurance policies required of licensed car dealers. As a result, Hurley's liability policy was required by law to insure permissive users with minimum limits of $100,000/ $300,000.

We are also persuaded by the reasoning in *John Deere Insurance Co. v. Allstate Insurance Co.*, 298 Ill. App. 3d 371, 377-78, 698 N.E.2d 635, 639-40 (1998), and find it equally applicable to a licensed car dealer that loans a vehicle incident to a repair business. The *John Deere* court found legislative intent to determine the amount of insurance needed based on the on the vehicle itself, not the identity of operator at the time of the accident. *John Deere*, 298 Ill. App. 3d at 377, 698 N.E.2d at 639. The court also relied on the public policy behind licensing car dealers. *John Deere*, 298 Ill. App. 3d at 377, 698 N.E.2d at 639. The legislature intended the $100,000/$300,000 limits to extend to permissive users who test-drive, exposing the public to risks and promoting the commercial success of the dealership. *John Deere*, 298 Ill. App. 3d at 378, 698 N.E.2d at 640.

Finally, we note that the phrase in Universal's policy, "minimum limits provision law," may refer to sections 5—101(b)(6) and 5—102(b)(4) as well as section 7—601. Sections 5—101(b)(6) and 5—102(b)(4) should control the issue of minimum policy limits because

those sections are more specifically applicable to car dealerships than section 7—601. See *Country Mutual Insurance Co. v. Universal Underwriters Insurance Co.*, 316 Ill. App. 3d 161, 164, 735 N.E.2d 1032, 1035 (2000). We conclude that the legislature intended to require permissive users such as Snyder to be covered under a licensed car dealer's insurance policy with minimum limits of at least $100,000/$300,000.

Because we hold that Snyder was required to be insured under section 5—101(b)(6) and/or section 5—102(b)(4), the terms of Universal's policy provided coverage limits in this case of $100,000/$300,000. As the total settlement and costs in defending claims here were below the $100,000/$300,000 limits of sole primary coverage under Universal's policy, the trial court correctly granted summary judgment in favor of Allstate.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, P.J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent. I would affirm the decision of the trial court insofar as it held that Universal's garage liability policy provided coverage for Snyder, who was test-driving the vehicle, and that the garage policy was primary and Snyder's Allstate policy was excess. I would reverse the decision that the policy limits were $500,000, and hold instead that the limits were $20,000 per person, $40,000 per accident, and $15,000 property damage, as required by the mandatory insurance law, section 7—601(a) of the Code. 625 ILCS 5/7—601(a) (West 1998).

The general rule, where one person operates the vehicle of another, is that the automobile liability policy issued to the owner is primary, and the policy issued to the driver is excess. *State Farm*, 182 Ill. 2d at 246, 695 N.E.2d at 851. The question becomes more complicated when a customer is involved in an accident while test-driving a vehicle offered for sale by a car dealer. The garage liability insurers who insure the car dealers have consistently argued that their policies should at most be excess, and they have regularly changed their policies to try to achieve that result. The supreme court, however, has not been sympathetic. See *Steinberg v. Universal Underwriters Insurance Co.*, 272 Ill. App. 3d 79, 84-85, 650 N.E.2d 14, 18 (1995) (Cook, J., dissenting). Garage liability insurers recognize the possibility they may

be ordered to afford coverage. The policy here provides that, if the insurer is required to afford coverage to permissive users, "the most WE will pay is that portion of such limits needed to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place."

*State Farm* recently reaffirmed the position that there is coverage and the garage liability policy is primary where a car is test-driven, relying on the statutory requirement that "no owner shall permit another person to operate \*\*\* a motor vehicle \*\*\* unless the motor vehicle is covered by a liability insurance policy" (625 ILCS 5/7—601(a) (West 1996)) and the statutory requirement that an "owner's policy" insure the person named therein " 'and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured.' " *State Farm*, 182 Ill. 2d at 244, 695 N.E.2d at 850, quoting 625 ILCS 5/7—317(b)(2) (West 1996). The quoted sections are found in chapter 7, the Illinois Safety and Family Financial Responsibility Law. Section 7—601 is found in article VI, "Mandatory Insurance." Section 7—317 is found in article III, "Proof of Financial Responsibility for the Future."

Section 7—601(a) provides that the insurance policy it refers to, the owner's policy, "shall be issued in amounts no less than the minimum amounts set \*\*\* under [s]ection 7—203." 625 ILCS 5/7—601(a) (West 1998). Section 7—203 requires limits of $20,000/$40,000 and $15,000. 625 ILCS 5/7—203 (West 1998). Section 7—203 is found along with sections 7—601(a) and 7—203 in chapter 7, under article II, "Security Following Accident."

The majority argues that the policy limits for this statutorily required coverage are at least $100,000/$300,000 and $50,000, the limits required by section 5—101(b)(6) of the Code (625 ILCS 5/5—101(b)(6) (West 1998)). Section 5—101 is found in chapter 5, "Dealers, Transporters, Wreckers[,] and Rebuilders," in article I, "Dealers." These statutory provisions dealing with new and used car dealers, however, do not require the coverage of permissive users. The supreme court in *State Farm* relied on the mandatory insurance provisions of the Illinois Safety and Family Financial Responsibility Law to find omnibus coverage, because neither the "New Car Dealers Act" (625 ILCS 5/5—101 (West 1998)) nor the "Used Car Dealers Act" (625 ILCS 5/5—102 (West 1998)) requires the furnishing of omnibus coverage. In fact, the insurer in *State Farm* argued that it was only required to comply with the dealers acts, which did not require omnibus coverage. *State Farm*, 182 Ill. 2d at 245, 695 N.E.2d at 851 (exemption where insured complied with other laws, "applies only when the insurance required by law provides the type of coverage required under

the mandatory insurance statute"). It is inconsistent to rely on one statute to impose coverage, but then ignore the limits required by that statute, and look to the limits of another statute which would not require coverage at all.

The majority relies on the First District's decision in *Deere*, which based its decision on its view of public policy. The First District saw no reason why, when a dealership's employee was driving the insured automobile, the limits should be higher than when a customer of the dealership was driving the same automobile. *Deere*, 298 Ill. App. 3d at 377-78, 698 N.E.2d at 639-40. I respectfully disagree with *Deere*. A court must not rewrite statutes to make them consistent with the court's idea of orderliness and public policy (*Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394-95, 712 N.E.2d 298, 305 (1998)), nor should a court rewrite insurance policies (*Oak Park Trust & Savings Bank v. Intercounty Title Co.*, 287 Ill. App. 3d 647, 651, 678 N.E.2d 723, 725 (1997)). If it *were* our task to achieve consistency, why should the customer have higher mandatory limits while he is test-driving the car under the dealer's policy than he does under his own policy after he has purchased the vehicle and is driving it home? Insurance is generally designed to protect the insured who paid for it, not the public at large. Interference with freedom of contract between the insurer and the insured is an exceptional thing and should be limited, if it is engaged in at all. The legislature is much better equipped to analyze these questions than are we, and we should respect the legislature's decision.

*Deere* also argued that the dealership in that case had filed a certificate of insurance with the Secretary of State, as required by section 5—101(b), stating that it had procured a policy which included garage liability limits of $500,000 per accident, limits in excess of those required by statute. *Deere* argued that because the dealership had "obligated itself to a $500,000 limit in its certificate of insurance," it "cannot now be heard to deny the coverage amount it contracted for to limit the same to either $20,000 or $100,000." *Deere*, 298 Ill. App. 3d at 379, 698 N.E.2d at 640. It is not surprising that the certificate of insurance did not attempt to limit the coverage for permissive users to $20,000. The insurance policy in question purported not to cover permissive users at all, as allowed by section 5—101(b). Furthermore, a certificate that states there are limits of $500,000 per *accident* is not inconsistent with a policy that imposes a lower limit per *person*. Finally, the idea that policy provisions not set out in a certificate of insurance cannot stand makes no sense. A certificate of insurance simply provides a brief statement that coverage exists. *Deere* will require, in the future, that the policy itself be filed as the certificate of insurance.