STARK MATERIALS COMPANY, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Fourth District   No. 4—03—0114

Argued April 20, 2004.—Opinion filed May 12, 2004.

David A. Hughes (argued), of Horwood, Marcus & Berk, Chtrd., of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Jerald S. Post (argued), Assistant Attorney General, of counsel), for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

On March 18, 1999, plaintiff, Stark Materials Company, Inc., brought an action against, *inter alios*, the Illinois Department of Revenue (Department) for declaratory judgment, pursuant to sections 2a and 2a.1 of the State Officers and Employees Money Disposition Act (Protest Monies Act) (30 ILCS 230/2a, 2a.1 (West 1998)), seeking recovery of tax monies paid, under protest, pursuant to the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 through 14 (West 1998)). The parties stipulated to the material facts and each party filed a motion for summary judgment based on those facts. On December 13, 2002, the trial court denied plaintiff's motion for summary judgment and granted the Department's cross-motion for summary judgment, concluding the Department had properly calculated plaintiff's liability under ROTA. On appeal, plaintiff argues that (1) its delivery charges are not taxable as "gross receipts" under ROTA, and (2) the increased gross sales reported by plaintiff for federal income-tax purposes are not taxable "gross receipts" under ROTA. We affirm.

The Department audited plaintiff's sales-tax account for the period of July 1, 1995, through December 31, 1997. On December 31, 1998, the Department issued plaintiff a notice of sales-tax liability indicating that plaintiff owed the following amounts:

| "Tax Due/Excess Tax Collected | $86,825 |
| Penalty | $0 |
| Interest | $15,733 |
| Payments/Credits | $0 |
| PAY THIS AMOUNT | $102,558." |

The total amount due was the result of the Department's conclusion, based on the audit, that plaintiff underpaid its taxes for the periods at issue in the amount of $86,825 and also owed $15,733 in statutory interest thereon.

On February 24, 1999, plaintiff responded to the notice by remitting the sum of $102,558 but paid the amount under protest pursuant to sections 2a and 2a.1 of the Protest Monies Act. On March 18, 1999, it filed a complaint for declaratory and injunctive relief. On March 22, 1999, the trial court entered a preliminary injunction preventing the State from disposing of the funds. On the same date, plaintiff submitted a second payment of $933.62 under protest for additional accrued interest on the deficiency. On March 4, 2002, the court dissolved the injunction to the extent of allowing a refund of $13,153, representing tax plus interest to plaintiff, and a release from the protest fund of $19,809 into appropriate funds of the state treasury.

As stated, each party filed a motion for summary judgment. In so doing, the parties stipulated that the two issues presented for resolution were questions of law, namely (1) whether plaintiff's delivery charges were subject to the retailers' occupation tax (ROT) and (2) whether the increased gross sales reported by plaintiff for federal income-tax purposes for the tax year ending December 31, 1996, were subject to the ROT. The parties entered into a stipulation of fact as to all material facts necessary to a resolution of the case, from the period between July 1, 1995, through December 31, 1997, and attached numerous exhibits.

Plaintiff is an Illinois corporation that mines, excavates, processes, and sells certain minerals extracted from quarries. After excavation, it processes the minerals into either ready-mix concrete (ready-mix) or an aggregate compound of processed gravel and sand. Plaintiff sells the ready-mix or aggregate compound to purchasers for use primarily in construction activities.

During the periods at issues, one of plaintiff's multiple customers was Stark Excavating. Plaintiff delivered ready-mix to Stark Excavating in trucks owned by Stark Excavating. Stark Excavating leased the trucks to plaintiff and imposed an hourly rental charge for the trucks. The trucks had rotating drums that were used to agitate the ready-mix. To the extent that a certain truck was not being used by plaintiff for a particular job, the truck was available to Stark Excavating for its

own purposes, including picking up ready-mix from plaintiff or another supplier. In those instances where Stark Excavating picked up ready-mix from plaintiff, plaintiff was not charged for use of the truck. If plaintiff delivered the ready-mix to Stark Excavating, then plaintiff was charged for use of the truck based on an hourly rate pursuant to the parties' lease agreement.

On invoices from plaintiff to Stark Excavating, one charge is labeled a "delivery charge." The "delivery charge" was based on a formula that took into account certain weighted variables, including operator costs, payroll costs, truck rental, fuel charges, plant maintenance costs, and union dues. The cost of concrete was not included in the delivery-charge calculation. The delivery charge in issue varied from delivery to delivery based on the aforementioned variables. The formula employed by plaintiff to determine the delivery charge was the same regardless of whether the purchaser was Stark Excavating or another purchaser.

Stark Excavating periodically purchased ready-mix from suppliers other than plaintiff when (1) the prices plaintiff charged were not favorable or (2) when Stark Excavating's project was not close to plaintiff's place of business. In those instances where Stark Excavating purchased concrete from other suppliers, it used its own trucks to pick up the concrete.

During the periods at issue, plaintiff did not include the delivery charges it collected from Stark Excavating in its gross receipts reported to the Department on its Illinois sales- and use-tax returns. Plaintiff included the delivery charge on all invoices to Stark Excavating regardless of whether plaintiff delivered the ready-mix or whether Stark Excavating picked it up.

William Vinyard, the Department's auditor, did not consider whether Stark Excavating had the necessary equipment (such as a truck with a rotating drum) to give it the option of picking up ready-mix directly from plaintiff. He concluded that the delivery charges in question were taxable because plaintiff is a ready-mix retailer. Based on prior audits, he was not aware of any other ready-mix retailer that sold ready-mix to customers with their own trucks with agitating drums that would allow customers to pick up the ready-mix from the retailer.

For federal income-tax purposes, plaintiff made an adjustment to its books and records to report increased gross sales for the income-tax year ending December 31, 1996. Plaintiff adjusted its books and records to report increased gross sales to avoid such an adjustment, and possible imposition of penalties, by the Internal Revenue Service (IRS) pursuant to the IRS's authority under section 482 of the Internal

Revenue Code (26 U.S.C. § 482 (1996)). Plaintiff made these "section 482" adjustments on its own initiative because it had previously and inadvertently used an improper method to transfer costs from one entity to another. Plaintiff made these adjustments prior to the date that it filed its original federal income-tax return for the year ending December 31, 1996, and took these adjustments into account in preparing that return.

The adjusted "gross receipts or sales" figure on plaintiff's federal income-tax return for the tax year ending December 31, 1996, was higher than the "gross selling price" for the same retail sales that plaintiff had previously reported on ROT returns filed with the Department. Plaintiff did not amend the previously filed ROT returns to reflect an increase in gross receipts to match the higher gross sales figure set out on its federal income-tax return. The adjustment to plaintiff's federal return did not reflect additional sales of tangible personal property at retail.

On June 14, 2002, plaintiff filed a motion for summary judgment, alleging that (1) the delivery charges in question were not "gross receipts" for purposes of the ROT and were therefore not subject to tax, and (2) the increased gross sales it reported for federal income-tax purposes for the tax year ending December 31, 1996, were not "gross receipts" for ROT purposes and were therefore not subject to tax. On July 23, 2002, the Department filed its own motion for summary judgment, alleging that (1) the charge labeled a "delivery charge" by plaintiff was not a transportation or delivery charge that could be deducted from plaintiff's gross receipts from the sale of concrete under section 130.415 of the ROT regulations (86 Ill. Adm. Code § 130.415 (1996)), and (2) plaintiff was required to use the same figure for gross receipts in computing its Illinois ROT liability that it reported as gross sales on its federal income-tax return.

In ruling on the parties' motions for summary judgment, the trial court noted that the Department's correction of plaintiff's ROT return "is *prima facie* evidence of the correctness of the amount of tax due," and that plaintiff, as the taxpayer, had the burden to prove by competent evidence that the corrected returns of the Department were not correct. It stated that while plaintiff had a right to impose a delivery charge, more is required than the option to pick up or deliver the product to avoid inclusion as a "gross receipt" for purposes of the ROT. The court concluded that where plaintiff failed to show a transportation or delivery charge separate and apart from the selling price, *i.e.*, a delivery charge was imposed regardless of whether the customer had the product delivered or picked up the product, plaintiff was not entitled to exclude the delivery charge from the selling price for purposes of the ROT.

As to whether plaintiff was required to use the increased gross sales reported for federal income-tax purposes for the tax year ending December 31, 1996, as the "gross receipts" on which the ROT was based, the trial court noted that plaintiff's books and records reflected a certain gross sales figure at the time of filing the ROT return. Later, plaintiff amended its books and records to show an increase in gross sales to avoid penalties under section 482 of the Internal Revenue Code. These figures were used in calculating plaintiff's federal income-tax return. The court agreed with plaintiff that it is entitled to charge its customers whatever price it chooses for its product and no requirement exists for a fair or arm's-length retail price for purpose of the ROT. However, it concluded that the underlying issue was the actual sales price or consideration received by plaintiff from Stark Excavating for the product in question. It noted the following:

> "The only thing in this record on which to base this decision are the books and records of the plaintiff. The parties have stipulated that plaintiff adjusted its own books and records to reflect an increase in gross sales. If the seller's own books and records are adjusted to show plaintiff received more than was originally stated for ROT tax purposes, then the Department is entitled to use these books and records in an audit to adjust the ROT tax. Otherwise, if an error occurred in the seller's books and records at the time the ROT tax return was filed and was subsequently corrected by the seller, the ROT tax could not be corrected. *** Plaintiff has produced no books or records which would show that it actually had sales receipts other than reflected in the stipulated adjusted books and records on which the Department relied to adjust the ROT tax."

The court concluded that the Department's calculation of the ROT based on plaintiff's own books and records was not improper. On December 13, 2002, the court granted the Department's motion for summary judgment and denied plaintiff's motion for summary judgment. This appeal followed.

In this case, the parties agreed that the issues were best resolved by motions for summary judgment. No material facts are in dispute and the trial court granted judgment as a matter of law. As a question of law, review of the trial court's granting of summary judgment is *de novo*. See *Fuller v. Snyder*, 323 Ill. App. 3d 303, 306, 752 N.E.2d 1212, 1215 (2001).

Plaintiff first argues that its delivery charges are not taxable "gross receipts" for purposes of the ROT because (1) delivery charges are not taxable if the customer has the option of picking up the product, (2) its delivery charges were separately stated on invoices,

and (3) the Department applies an impermissible *per se* rule to ready-mix retailers.

■ A plaintiff taxpayer must establish by competent evidence that a return corrected by the Department is not correct, and until it provides such proof, corrected returns are presumptively correct. *Sprague v. Johnson*, 195 Ill. App. 3d 798, 803, 552 N.E.2d 436, 439 (1990); 35 ILCS 120/4 (West 1998). A taxpayer may overcome the presumption by presenting his books and records. See *Sprague*, 195 Ill. App. 3d at 803, 552 N.E.2d at 439. "As a general rule, all sales of tangible personal property are taxable unless the taxpayer produces evidence identified with its books and records to establish its claim of nonliability." (Emphasis omitted.) *Soho Club, Inc. v. Department of Revenue*, 269 Ill. App. 3d 220, 229, 645 N.E.2d 1060, 1066 (1995).

■ Under section 1 of ROTA, "gross receipts" are the "total selling price or the amount of such sales." 35 ILCS 120/1 (West 1996); see also 86 Ill. Adm. Code § 130.401 (1996) (defining "gross receipts" as "all the consideration actually received by the seller"). The issue then becomes whether delivery charges are included within the "selling price." 86 Ill. Adm. Code § 130.415(b) (1996). If delivery charges are included within the "selling price," the expense is an element of cost to the seller and the seller may not deduct such expense in computing its ROT liability. 86 Ill. Adm. Code § 130.415(c) (1996). The "selling price" is defined in pertinent part as:

> "the consideration for a sale *** which *** shall be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever, but does not include charges that are added to prices by sellers on account of the seller's tax liability under this Act." 35 ILCS 120/1 (West 1996).

■ Here, plaintiff had a separate charge for delivery on its invoices but the evidence reveals that the charges were not separate and apart from the "selling price." First, the "delivery charges" were not reflective of the costs of any delivery. "Operator costs," which were made up of "employee payroll and equipment rental costs," were not clearly related to delivery. Similarly, "plant costs," which were made up of "payroll and maintenance costs associated with operating Stark Materials' ready mix plant," should also have been included in the "selling price." See 35 ILCS 120/1 (West 1996) ("labor or service costs or any other expense whatsoever" is not deductible from the "selling price"). "Operator costs" and "plant costs" constituted 22.11% of the delivery charges imposed on each invoice.

Moreover, plaintiff imposed this charge on all invoices, regardless of whether the customer did or did not pick up the product, or had the

ability to pick up the product. As the trial court noted, "[t]he ability to pick up the product is a factor but must be coupled with the customer's option to pay a delivery charge if delivered or not pay a delivery charge if he picks up the product." While plaintiff had a right to impose a delivery charge, it failed to show a transportation or delivery charge separate and apart from the selling price because its customers did not have an option to pick up the product and not pay a delivery charge. Any "option" that existed was purely illusory.

While plaintiff submits that it did not have the opportunity to sufficiently develop the record to prove the nature of the delivery charges, the parties stipulated to the material facts and agreed that summary judgment was the proper vehicle for disposition of the case. Accordingly, plaintiff cannot now complain that it was deprived of the opportunity to build a record. See generally *Arvia v. Madigan*, 209 Ill. 2d 520, 529 (2004). Because plaintiff failed to show its "delivery charges" were separate and apart from the "selling price," it cannot overcome the presumption that the Department properly determined such charges were taxable "gross receipts" under ROTA.

Plaintiff also argues that the separate delivery charges on its invoices indicate those charges are not "gross receipts" for purposes of the ROT. However, whether a seller may deduct from its gross receipts from sales of tangible personal property at retail "depends not upon the separate billing of such transportation or delivery charges or expense," but upon whether the charges are included in the selling price of the property sold or whether the seller separately contracts for those charges by not including them in the selling price. 86 Ill. Adm. Code § 130.415(b) (1996). As stated above, the charges are within the "selling price" of the product. Further, plaintiff acknowledges that it did not separately contract for those charges. Plaintiff's argument is without merit.

Plaintiff next contends that the Department applies an impermissible *per se* rule regarding the taxability of delivery charges imposed by ready-mix retailers. However, plaintiff could only suffer prejudice under such a rule if plaintiff imposed valid delivery charges. Because we determined above that plaintiff's delivery charges were not valid for ROT purposes, plaintiff can show no prejudice even if the Department applied such a rule.

Plaintiff also argues that the increased gross sales that it reported for federal income-tax purposes for the tax year ending December 31, 1996, are not taxable "gross receipts" for purposes of ROTA. We disagree.

Plaintiff owes ROTA taxes based on its "gross receipts." 35 ILCS 120/2—10 (West 1996). It acknowledges that for the tax year ending

December 31, 1996, prior to the Department's audit, it adjusted its books and records to show an increased amount of gross sales receipts. It had earlier filed a state ROTA tax return reporting a lesser amount of gross receipts, and the Department's auditor assessed an increase in tax liability based upon the new, higher figure.

We again note that plaintiff has the burden to overcome the presumption of reasonableness that the Department's calculations were correct. Before such presumption is overcome, plaintiff must present some evidence identified with its books or records. *Copilevitz v. Department of Revenue*, 41 Ill. 2d 154, 157, 242 N.E.2d 205, 207 (1968).

Here, the Department based its conclusions on the books and records themselves. Plaintiff's books and records reflect the higher amount of gross sales and receipts as stated on plaintiff's federal income-tax return. While plaintiff challenges the corrected returns, it offered no testimony or evidence in support of the correctness of its original return. As we stated in *Quincy Trading Post, Inc. v. Department of Revenue*, 12 Ill. App. 3d 725, 730-31, 298 N.E.2d 789, 793 (1973):

> "In short, the plaintiff may not prevail by merely saying its own return was correct, and that the revenue department must prove its return correct. Simply questioning the Department of Revenue's return or denying its accuracy does not shift the burden to the Department of Revenue."

Plaintiff implicitly asserts that if it changed its books and records in good faith, such actions should not be imputed against it for ROT purposes. We decline to adopt plaintiff's position and depart from the rule requiring a taxpayer to provide evidence of his original return. To accept plaintiff's contention would effectively enable a taxpayer to avoid any Department investigation of intentional or unintentional errors contained within an original ROT return. To avoid such discovery, a taxpayer would need only file a later federal income-tax return with different figures and change its books and records accordingly. Because plaintiff has failed to present competent evidence in support of its original return, we find that its challenge is insufficient to overcome the presumption in favor of the Department.

In summary, we conclude that plaintiff has failed to overcome the Department's *prima facie* case that (1) plaintiff's delivery charges were taxable "gross receipts" under ROTA and (2) the increased amount of gross sales reported on plaintiff's federal income-tax return and correspondingly adjusted in its books and records were also taxable "gross receipts" under ROTA. Accordingly, because plaintiff failed to meet its burden to show the Department's calculations were incor-

rect, the trial court properly granted the Department's motion for summary judgment and denied plaintiff's motion for summary judgment.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and APPLETON, JJ., concur.